# JUNE TERM, 1888.*

CHARLES GANONG v. WILLIAM GREEN AND ELMER N
HOLLAND.

[ See 64 Mich. 488.]

*Chattel mortgages—Execution against mortgagor's interest—Sale—
Trover by mortgagee—Measure of damages—Evidence—
Fraudulent couveyances—Exemptions.[1]*

1. Under How. Stat. § 7682, the interest of a mortgagor in per-
sonal property is subject to levy and sale on execution at any
time before the *actual* foreclosure of the mortgage ; but such
sale cannot be in parcels, but must be of the mortgagor's inter-
est in the *whole* property. *Worthington v. Hanna,* 23 Mich.
530 ; *Harvey v. McAdams,* 32 Id. 472 ; *King v. Hubbell,* 42 Id.
597.

2. The measure of damages in trover by a mortgagee for the
*wrongful* sale of chattel-mortgaged property *in parcels* is the
amount remaining unpaid for principal and interest on the
mortgage, not exceeding the value of the property so wrong-
fully sold, which amount may be contested by the defendant,
and to this end he may show the value of other property taken
by the mortgagee on the mortgage.

3. On the trial of an action of trover for the value of mortgaged
property seized on execution against the mortgagor on his
premises, an agreement between the mortgagor and mortgagee
by which the latter was entitled to the immediate possession of
the property, with the right to hold it until the mortgage debt
was due or paid, is admissible.

4. On the cross-examination of a mortgagee who sues for the value
of a portion of the mortgaged property sold on execution
against the mortgagor, he may be inquired of fully as to other

---

* Continued from Vol. 70.
[1] For full digest of points decided, see *Table of Cases Reported.*

portions of the property released to the mortgagor, or appropriated by the mortgagee under his mortgage. ·

5. An execution debtor need not select mortgaged property for his exemptions. *Baldwin v. Talbot,* 43 Mich. 11.

6. Where, in a suit by a mortgagee for the value of a portion of the property sold on an execution against the mortgagor, a witness for the plaintiff, who had assisted in transacting the business culminating in the execution of the mortgage, denied on cross-examination having stated to a third party that he had counseled the mortgagor as to what disposition he could make of his property so as to cover it úp, the defendant is bound by his answer, and the testimony of such third party that he did so state, not in the presence of the plaintiff, is inadmissible, even for the purpose of impeaching said witness

7. Where, in a suit involving the validity of a chattel mortgage as to creditors, the value of the property is out of all proportion to the mortgage debt, this is a circumstance to be considered by the jury in determining the *good faith* of the transaction. *Loomis v. Smith,* 37 Mich. 595; *Allen v. Kinyon,* 41 Id. 281; *Olmstead v. Mattison,* 45 Id. 617.

8. Where two chattel mortgages were executed on the same day, and by an arrangement between the mortgagor and the mortgagees in one of the mortgages the amount of their lien was fixed at a sum less than that shown by the mortgage, of which fact the other mortgagee had knowledge, and purchases the mortgage for the sum so fixed, he can only claim a lien thereunder, as against the creditors of the mortgagor, for the sum so paid and interest thereon.

Error to Eaton. (Hooker, J.) Argued April 19, 1888. Decided June 22, 1888.

Trover. Defendants bring error. Reversed. The facts are stated in the opinion.

*Dean & McCall* and *P. T. Van Zile,* for appellants, contended as stated in the opinion.

*James M. Powers,* for plaintiff, contended:

1. A mortgagee of chattels, whether in or out of possession, may sue for any unlawful damage done to his security, and is not obliged to first look to the personal responsibility of his debtor,

or show his insolvency; citing *Worthington v. Hanna*, 23 Mich. 530.

2. A mortgagee having the right to the possession of the mortgaged property may sue in trover for its conversion; citing *Worthington v. Hanna*, 23 Mich. 530; *Harvey v. McAdams*, 32 Id. 472; and an agreement between the mortgagor and mortgagee regarding its possession can afford no protection against its unlawful conversion; citing last-named case.

3. The possession of a mortgagor is in law that of the mortgagee, who may maintain trover, trespass, or replevin for any unlawful intermeddling with it by a third party; citing *Tannahill v. Tuttle*, 3 Mich. 104.

4. The proper measure of damages in trover where the plaintiff has only a special interest in the property is the value of such interest at date of conversion, with interest, not exceeding the value of the property; citing *Burk v. Webb*, 32 Mich. 173.

LONG, J. This is an action of trover brought by the plaintiff to recover certain property described in and covered by two chattel mortgages executed by Thaddeus Ganong, on November 12, 1884,—one to the plaintiff, and the other to Evans & Hunsiker, merchants at Bellevue, Mich., which was subsequently assigned to Charles Ganong, the plaintiff. The consideration mentioned in the mortgage to Charles Ganong was $150, and in the one to Evans & Hunsiker was $103.50.

November 6, 1884, defendant William Green commenced an action of *assumpsit* against Thaddeus Ganong, the father of plaintiff, on a promissory note dated June 18, 1879, and on November 15 recovered judgment in justice's court for $183.92 damages, and $3.10 costs. November 21, 1884, execution issued, and was placed in the hands of Elmer Holland, the other defendant, then a constable, and also a deputy sheriff of Eaton county. November 21, defendant Holland levied upon the property of Thaddeus Ganong. He selected his exemptions; the property levied upon being owned by, and in the possession, use, and control of, Thaddeus Ganong before and

at the time of the levy.    November 26, defendant Holland advertised the property levied on for sale, and on December 2, 1884, sold the same under the execution.

After the levy had been made, and the exemptions set out, the son, Charles Ganong, plaintiff, executed to his father a release from his mortgage of the exemptions, and the father executed to Charles a further instrument in writing giving to Charles immediate possession and right of possession of all the property levied upon and not levied upon, which, so far as he could, Charles took possession of, and, except as it has been sold by himself or his father, he still has possession of.

The property is described in the mortgage to Charles Ganong as—

"Eight acres of wheat now growing on my farm in Walton;  100 bushels of corn;  100 bushels of oats;  1 brown mare, 4 years old;  1 sorrel mare, with white stripe in the face;  1 bay gelding, 3 years old;  3 cows;  2 calves; 1 reaper;  1 mower;  1 two-horse cultivator; 1 plow;  2 two-shovel plows;  2 five-tooth cultivators;  1 sulky rake; 1 single top buggy and harness;  6 hogs;  1 platform buggy;  1 lumber wagon;  1 double harness;  1 corn-sheller; 1 single cutter;  and all the hay now on my farm."

The Evans & Hunsiker mortgage covered the same property, except the 6 hogs, the top buggy, and the hay. The Charles Ganong mortgage was made expressly subject to that.    These two mortgages were filed in the town clerk's office on the day they were given.

The property levied upon by the defendant Holland was—

"Eight acres of wheat on the ground, 1 cow, 2 heifer calves, 1 two-year-old colt, 10 tons of hay, 1 single top carriage, 1 mowing-machine, 1 grain-drill, 1 reaper, 100 bushels of oats, 1 single harness, 200 bushels of corn, 1 corn-sheller, 1 cutter, 1 fanning-mill, 1 30-tooth square drag, 1 walking-plow, 1 five-tooth cultivator, 1 lumber wagon, 1 two-horse cultivator, 1 single-shovel plow, 1

double-shovel plow, 1 hay-rake, 3 stacks of corn-stalks, 1 platform wagon, 1 brown mare, 1 sorrel mare, 1 double-team harness."

Out of this property Thaddeus Ganong selected as his exemptions the brown mare, 4 years old; the bay gelding, 3 years old; the single top buggy and single harness; and the property not selected was sold by defendant Holland in separate parcels, and to a number of different individuals.

On the day of the sale the property levied upon and covered by the mortgages was demanded by the plaintiff of both defendants while it was in their possession and control, and they refused to deliver it to the plaintiff.

At the time the sale was commenced, and before any of the property had been sold, the plaintiff, by his attorney, informed the defendants that he held a mortgage for $150 on the property, and that he also owned the Evans & Hunsiker mortgage for $103.50, and that they must either sell the property all together subject to these two mortgages, or else satisfy the mortgages, and then sell in parcels if they wished. Defendants refused to recognize the plaintiff's rights under the mortgages, and proceeded and sold the property in parcels. The plaintiff then brought this action in trover, and upon the trial recovered a verdict and judgment for the sum of $297.12. Defendants bring the case into this Court by writ of error.

The case has once been before this Court, and the judgment of the court below reversed and a new trial ordered, and is found reported in 64 Mich. 488 (31 N. W. Rep. 461).

The defendants' claim on the former trial, as in this, was that the mortgages were void. The court in the former trial held that the defendants had no standing to contest the plaintiff's title, because of a void sale, for the reason that the notice was defective and void, inasmuch

as it did not state the names of the parties in the suit upon which the execution issued, and instructed the jury to find a verdict for the plaintiff.

This Court held the notice of sale valid, and that the defendants had a right to go to the jury upon the question of the validity of plaintiff's mortgage lien, and Mr. Justice MORSE, delivering the opinion of this Court in that case, said:

"If his mortgages, or one of them, were valid, the sale of the property in parcels is void, and he can recover. If his mortgages were fraudulent, or had been paid, the sale cannot be questioned by him in this suit."

As shown by the record in the present case, the property sold in parcels was the platform wagon, 2 cutters, harrow, hay-rake, corn-huller, harness, fanning-mill, mowing-machine, cultivator, 5 tons of hay, 20 bags of oats, reaper, 2 calves, sorrel mare, 1 cow, and 5 acres of wheat, —the sale amounting to the sum of $171.15 ; and, after deducting the officer's fees and expenses of sale of $32.78, the balance of $138.37 was applied upon the execution, leaving a balance still unpaid of $49.29.

The record contains 28 assignments of error. The plaintiff's sole claim for recovery was under the two mortgages before mentioned. The defendants' contention on the trial was that the mortgage given· to Charles Ganong was fraudulent and void as to the creditors of Thaddeus Ganong, and that the other mortgage, called the "Evans & Hunsiker Mortgage," had been paid by one Dolph, a son-in-law of Thaddeus Ganong. Defendants claimed, further, that Charles Ganong, the plaintiff, had taken, sold, and appropriated to his own use sufficient of the mortgaged property to more than pay his pretended claim, and that not only was his mortgage fraudulent and void, and the Evans & Hunsiker mortgage

paid, but that in plaintiff's hands both had been fully satisfied.

As the facts are presented upon this record, there can be no justification for the sale of this property in separate parcels if one or both of the mortgages held by plaintiff were valid and subsisting liens at the time of the levy and sale under the execution. Under such circumstances he must so sell as to keep intact the mortgagee's liens. Under section 7682, How. Stat., the interest of the mortgagor is, in this State, subject to seizure upon attachment, and to levy and sale on execution, at any time before actual foreclosure of the mortgage; and the officer may take possession of the property from the mortgagors, and advertise and sell such interest. The officer cannot, however, sell in parcels, but must sell the mortgaged interest in the whole property. *Harvey v. McAdams,* 32 Mich. 472; *Worthington v. Hanna,* 23 Id. 530; *King v. Hubbell,* 42 Id. 597 (4 N. W. Rep. 440).

In an action of trover by the mortgagee under a valid mortgage against one for the wrongful sale of the property in parcels under an execution, the amount of the recovery must be limited to the amount remaining unpaid upon the mortgage for principal and interest, not exceeding the value of the property so wrongfully sold, so that upon the trial the amount owing and remaining unpaid upon the mortgage may be contested by the execution creditor under a valid execution, although the sale may have been made in parcels.

Among the property taken by the plaintiff on his mortgage from Thaddeus Ganong was 3 acres of wheat then growing, which afterwards ripened and was harvested, and estimated at 90 bushels. This, the defendants claimed, ought to be credited on the mortgage as so much paid, as it would, if the jury found the mortgage a valid and subsisting lien, be so much paid upon the

mortgage. The question was asked Thaddeus Ganong by
defendants' counsel on cross-examination : "What was it
[the wheat] worth a bushel?" To this the plaintiff
objected, and it was ruled out by the court. Defendants
base their first assignment of error upon this ruling.
The witness did, however, subsequently answer this ques-
tion, upon his further cross-examination, that it was
worth from 80 to 90 cents per bushel. The court, in his
instructions to the jury upon this branch of the case,
said :

"He would have the right to sue for and recover as
damages the value of the property which has been sold
upon the execution, not exceeding the amount which was
due, with interest, and not exceeding the value of the
property. Of course the amount of your verdict in case
you find for the plaintiff would be the value of the prop-
erty sold at the sale, with interest from that time until
to-day, but not exceeding the amount due upon the
mortgage or mortgages which you may find to be due,
with the interest which they properly bear."

We find no error in this. The court limited the
amount of the recovery to the amount due on the mort-
gages, if the jury found such mortgage or mortgages
valid ; and the jury must have understood that the court
in speaking of the amount due on the mortgages meant
the amount remaining unpaid. It would, however, be a
legitimate subject of inquiry as to what was done with
the property taken by Charles, and how much the mort-
gages were reduced by the property taken, as fixing the
amount remaining unpaid.

Error is also assigned upon the ruling of the court in
admitting in evidence the two writings passing between
plaintiff and his father shortly after the levy of the exe-
cution, by the terms of which the plaintiff released from
the operation of his mortgage all the property selected by
Thaddeus Ganong as exempt property, and Thaddeus

gave to plaintiff the right to take immediate possession of all the property described in the two mortgages. This did not in any manner prejudice the defendants' rights, especially as the court afterwards in his charge to the jury expressly stated that—

"The other writing—the third one which I alluded to at the outset—cut no great figure in the case so far as giving any right to possession, for it was at most an attempt by Thaddeus Ganong to give a right which already existed under the mortgage, if valid, and which conferred no right whatever if not valid."

This same question was discussed by Mr. Justice MORSE on the former hearing of this case in this Court, in which it was said:

"When taken upon the execution, the property was in possession of the mortgagor, Thaddeus Ganong; but plaintiff claimed that he was entitled to the immediate possession of the goods by agreement with his father, and had the right to hold the same until the mortgages were due or paid. We think the evidence of such an arrangement was admissible."

We see no reason for changing the conclusion arrived at on the former hearing.

The eighth assignment of error relates to the ruling of the court in excluding the answer to the question put to the plaintiff on his cross-examination, as follows:

"Tell the jury why, with all this degree of business ability, you have not looked after that property, and secured what was due you."

The answer to this question was objected to, and excluded by the court. The plaintiff was being cross-examined as to certain property which he had released from his mortgages, his reasons for doing so; also as to property which he took into his possession after the time of the levy. This property was not involved in the controversy in this suit. It was no part of that sold under the execution

for the value of which the plaintiff was seeking to recover. The broadest latitude should be allowed on cross-examination where fraud is charged; and, while this inquiry was not directed to the property in controversy, yet it was a material inquiry as to what Charles had done with that part of the property not set out as exemptions to Thaddeus; and the defendants had the right to show Charles' appropriation of it in reducing the amount of his mortgage. The court erred in not permitting the defendants to go fully into the inquiry on the cross-examination of Charles as to this part of the property, and his dealings with his father in relation to it.

The plaintiff had the right, however, to release that part selected as exemptions by Thaddeus from his mortgage, and the creditor was bound to set it out as exemptions; and even if this part of the property had not been covered by the mortgages, the debtor would have had the right to select it. An execution debtor need not select mortgaged property for his exemptions. *Baldwin v. Talbot*, 43 Mich. 11 (4 N. W. Rep. 547).

The sixteenth assignment of error is based upon the following question to witness Hunsiker:

"Did he [Powers] tell you in that conversation that he had counseled Thaddeus Ganong as to what disposition he could make of his property so as to cover it up?"

Defendants were attempting to show that the mortgage to the plaintiff was fraudulent. Powers had done the business for the Ganongs, and was witness for the plaintiff on the trial; and while on the stand had been asked about this matter, and denied so telling Hunsiker. The answer to this question was properly excluded. It is not claimed that the plaintiff was present during this talk between witness and Powers, and whatever Powers might have said about it could in no manner affect his rights. Witness Powers having denied giving any such advice,

the defendants were bound by this answer, and the question would not be admissible even for the purpose of impeaching the witness Powers, and it was wholly immaterial.

At the close of the testimony the defendants asked the court in their first request to charge the jury—

"If you find that the value of the property upon which the mortgage was given by Thaddeus Ganong to Charles Ganong, the plaintiff in this case, was largely out of proportion to the debt secured, then, and in that case, I instruct you that this is a circumstance from which you may infer the fraudulent intent on the part of Charles Ganong, which would render that mortgage invalid against the creditors of Thaddeus Ganong"

The court charged the jury upon this branch of the case :

"Now, it is true that there was a large amount of property included in these mortgages, and largely in excess of plaintiff's debt, but that does not make any difference with the plaintiff. As long as he has not collected his debt, and not foreclosed his mortgages and got his pay, he has a right to all his security, and he may proceed to collect his debt out of any part of the property ; and for that reason he would have the right to sue for and recover as damages the value of the property which has been sold upon the execution, not exceeding the amount which was due, with interest, and not exceeding the value of the property."

In this the court was in error. The value of the property may be out of all proportion to the debt secured, and this would be a circumstance which could be considered by the jury, and from which, with other facts, they might find that the creditor's intention was not in good faith to secure himself, but to hinder, delay, or defraud others. *Olmstead v. Mattison,* 45 Mich. 617 (8 N. W. Rep. 555) ; *Allen v. Kinyon,* 41 Id. 281 (1 N. W. Rep. 863) ; *Loomis v. Smith,* 37 Id. 595. It appears from the record that the property covered by the mortgages and

not taken under the execution amounted to from $450 to $550, and, adding to this the amount levied upon, nearly the value of the whole property covered by the mortgages would be $600 to $700. The court should have submitted this question to the jury as a circumstance which, with other facts shown on the trial, might have led the jury·to a different conclusion than that reached by them. At least we cannot say that it did not influence their verdict. The court was laboring under the conviction that by reason of the fact that plaintiff had not collected his debt, and had not foreclosed his mortgage and got his pay, he had a right to hold all the property as security.

The question raised, however, is one relating to the *bona fides* of the parties in taking and giving the mortgage. It was claimed by the defendants that no consideration was given by the plaintiff to his father for the mortgage, and that it was given as a cover, and to hinder, delay, or defraud creditors; and as bearing upon that question the court should have instructed the jury that they should take into consideration the amount of property covered by the mortgage as a circumstance taken in connection with other facts in determining those questions. It may be true that this circumstance standing alone would not justify the jury in finding fraud and an intent to hinder, delay, or defraud creditors, yet there were other circumstances in the case, claimed by defendants to have been proven on the trial, to which the court called the attention of the jury as bearing upon this question. The court said:

"It is claimed it was given to secure an indebtedness of $150 due to the plaintiff from his father. This the defendants dispute. It is a question of fact for you to determine whether the first mortgage was given for an indebtedness due from the father to the son, and whether the plaintiff furnished the money and property alleged to his father with the understanding it should be repaid.

If he didn't, the mortgage cannot be sustained against the creditors.　*　*　*　*　*　*　*　*　*　*

"This naturally presents the question of plaintiff's minority. A minor may be the recipient of personal property by gift, or he may own property raised by himself, although it was raised on the farm of his parent by his consent or sufferance.　*　*　*　If you find that the plaintiff did furnish his father such money and property as claimed, but that instead of it being his own property it belonged to his father as his of right, and was not a loan by the son to the father, it would not be a sufficient consideration for the mortgage, which in that event would be void against creditors."

No question is raised upon this part of the charge. It was properly given. But it shows that the defendants were contesting the *bona fides* of the transaction; and in this connection the court should have charged the jury that they should take into consideration the fact also that the mortgage covered a large amount of property, and, if they found that it was largely in excess of an amount sufficient to meet the amount claimed in the mortgage, they should consider this as a circumstance, with other facts proven, as bearing upon the *bona fides* of the parties, and it was error to charge that this could make no difference.

Counsel for defendants also contend that, while the mortgage given to Evans & Hunsiker was for the sum of $103.50, yet the agreement was between Thaddeus Ganong and the mortgagees that upon the payment of $39 they would discharge the mortgage, and that the mortgage was really given to secure the debt of Frank Dolph. It appears that, before the time of the sale of the property on the execution, Frank Dolph paid to Evans & Hunsiker between $30 and $40, and took an assignment of the mortgage to himself, and subsequently assigned it to the plaintiff. Some testimony is also given showing that Dolph actually made the purchase for the plaintiff, to whom he was

indebted, and the amount paid by him was turned on this account.

It is also contended that, the mortgage being given to secure the payment of a debt of Frank Dolph, when he, Dolph, paid the $30 or $40, and satisfied Evans & Hunsiker for their debt, although he took an assignment of the mortgage to himself, it operated as a full discharge and satisfaction of the mortgage, and his subsequent assignment to plaintiff would not revive it. This last question, however, was fairly submitted to the jury, in which the court said:

" If this was a debt which Dolph was legally and primarily liable to pay, and for which Thaddeus Ganong was surety, it was a payment by him unless he did so in behalf of Charles Ganong; but if it was Frank Dolph's debt, and he went to Evans & Hunsiker and paid it with his own money, although he took an assignment, it was an extinguishment of the debt, and any subsequent transfer to the plaintiff would not renew its life. It would be an end of the mortgage so far as this case was concerned."

It is contended, however, by defendants, that, even if Dolph purchased the mortgage for Charles Ganong, and he himself was not liable for the debt which the mortgage was given to secure, yet, it being conceded that the arrangement was made between Thaddeus Ganong and Evans & Hunsiker that upon the payment of $39 they would discharge the mortgage, and the plaintiff having purchased it at from $30 to $40, he could only make claim in this action for the amount so actually paid by him, so far as this mortgage is concerned. The court charged the jury upon that part of the case, among other matters, as follows :

" On the other hand, if the plaintiff chooses to send to Hunsiker and buy this mortgage, and provided the money, or made an arrangement with Frank Dolph that he should buy it for him, for which he became responsible, or to apply it on what Dolph owed him, and this was actually

done in good faith and from his money, that would make him the owner when the proper assignments were made, whether one or two were given ; and any agreement of Hunsiker with Thaddeus Ganong not to transfer, or to accept a portion of the debt as payment in full, would make no difference, and the whole amount of the mortgage would be due him."

In this the court was in error, and we do not think the following words, added by the court, cured such error, although the court was correct in that part of its charge :

" If, however, this was a mere subterfuge of Thaddeus Ganong to take up his mortgage and yet keep it alive by having it appear to be a purchase by his son, when in fact it was in reality a payment by himself or Dolph, if Dolph was the primary debtor, the plaintiff cannot, set up this mortgage as the basis of his claim."

That is, even though the jury find that Charles Ganong only paid $39 for the mortgage, he may set it up in this action, and make claim to the whole amount of the $103.50 for which it was given.

If Charles Ganong, the plaintiff, had knowledge of the arrangement between his father and Evans & Hunsiker at the time the mortgage was given,—that upon the payment of $39 they would discharge the mortgage,—and Charles took his mortgage subject to this Evans & Hunsiker mortgage, with the understanding that it was only for the sum of $39, and that was all the lien Evans & Hunsiker claimed upon the property, and with full knowledge of this fact purchased in the mortgage and took the assignment upon the payment of $39, he cannot be permitted, as against a creditor of Thaddeus Ganong, to set the mortgage up for any greater amount than that paid by him, and interest thereon. *Stewart v. Brown,* 48 Mich. 383 (12 N. W. Rep. 499).

We have discussed all the assignments of error which

we deem material, and need not pursue the subject further.

For the errors pointed out, the judgment of the court below will be reversed, with costs, and a new trial ordered.

SHERWOOD, C. J., CHAMPLIN and MORSE, JJ., concurred. CAMPBELL, J., did not sit.