# Reading Iron Works' Estate.   Reading Trust Co.'s Appeal.

*Assigned estate — Corporation—Claims—Damages awarded stockholder who was ousted before insolvency.*

The claims of ordinary creditors of an assigned estate are not superior to the claim of one who, as an ousted stockholder, by a decree made after the assignment on proceedings instituted before the assignment, is awarded damages for an act antecedent to the insolvency.

In the case of Reading Trust Co. v. Reading Iron Works, 137 Pa. 282, the right of the present appellant to receive dividends out of the assigned estate of the Reading Iron Works on the amount thereby awarded to it was finally settled.

Argued March 3, 1892.   Appeal, No. 304, Jan. T., 1892, by the Reading Trust Co., trustee, from decree of C. P. Berks Co., dismissing exceptions to auditor's report distributing balance in the hands of the Reading Trust Co., assignee for benefit of creditors of the Reading Iron Works.   Before STERRETT, GREEN, WILLIAMS, McCOLLUM and MITCHELL, JJ.

Claim to participate in the distribution of an assigned estate.

Subsequently to the decision in Reading Trust Co. v. Reading Iron Works, 137 Pa. 282, the assignee of the Reading Iron Works filed its account, and an auditor was appointed to make distribution of the balance appearing therein among the creditors.   The appellant presented a claim for the $8,208.37 awarded to it in the above case.   This claim was rejected by the auditor, and exceptions filed to its rejection were dismissed by the court below in an opinion by ENDLICH, J., in which he held that the outside creditors of the assignor were not represented in the previous litigation and necessarily their rights were not passed upon therein; that the sum previously decreed to appellant represented the stock to which it was entitled and which the company had refused to issue to it, and that therefore the appellant was not entitled to participate in this distribution, citing Christian's Ap., 102 Pa. 184.

The other facts appear in the opinion of the Supreme Court and the report of above case.

*Errors assigned* were, the disallowance of (1) appellant's claim and (2) his costs in the equity case in which it was established.

*Isaac Hiester* and *Cyrus G. Derr*, for appellant.—This case is very different from Christian's Ap., 102 Pa. 184. There it was part of the fundamental law of the building association that a stockholder could, upon notice, draw out his money : Of course, he could not do so to the prejudice of ordinary creditors and other stockholders. But it is submitted that even there, if the stockholder's claim had been refused for seven years and until insolvency, it would in justice rank with those of ordinary creditors.

*George F. Baer*, of *Baer & Snyder*, for appellee.

OPINION BY MR. JUSTICE MITCHELL, May 9, 1892:

The appellants had a decree of the court of common pleas for the payment of money by the Reading Iron Works, affirmed by this court, 137 Pa. 282, and it would seem that this ought to have put an end to further contention as to the payment out of the assets of the iron works. When however the claim was presented to the auditor, he entered into an elaborate examination of the proceedings and reported as a fact that the decree was not for a debt due, as it purported to be, but for the value of stock in the iron works, and that as appellant was a stockholder at the time of the assignment it was not entitled to participate in the distribution. On this finding of the auditor the court below thought the case came within the principle that conceding the validity and finality of the judgment, still permits an inquiry, even in a collateral proceeding, into the right to come in upon a particular fund.

But the fatal objection to this view is that the court making the decree had already considered and determined this very question. When the iron works refused to issue the Hunter stock, the appellant had two remedies. It might file a bill to enforce the specific delivery of the stock or it might abandon its claim to the stock and sue for damages for the conversion. If it had done the latter and recovered judgment no question could have been raised as to its standing as a creditor. What it did however, was to file a bill in the alternative for the issue to it of the shares or for the payment of their value and damages for the conversion. This bill put the status of the appellant, whether as a stockholder entitled to specific delivery of stock, or as a creditor entitled to damages for its conversion,

into the hands of the court of equity to determine.   And there were good reasons why the application for relief should have been put thus in the alternative.   For illustration, it might turn out that in the meantime all the stock of the company had been issued to bona fide holders, and a decree for stock could not be enforced for want of power in the corporation to exceed the limits of its charter, or it might turn out that in the course of a protracted litigation the stock had become worthless and a decree for its delivery would be illusory and valueless.   The latter supposition is what actually happened.   When the company made its assignment the rights of the appellant whether as stockholder or creditor were still sub judice in the equity suit.   The court of equity had the facts before it as appears from the supplemental report of the master, (see 137 Pa. 292), and by its final decree for damages in money, established appellant's status as a creditor.   The very point now raised was made by the assignee, overruled, and the decree put on the ground that the stock was no longer of any value, and complainant was entitled to compensation in money.   Of what use was it to decree that he should not be given worthless stock but money, if he was not to be allowed to have the money out of the only assets whence he could get it?   A decree for money against an insolvent corporation without a right to share in its assets is no better than a decree for stock in the same insolvent —it is giving a stone to him who asks for bread.   It must be assumed that the court meant its decree not for mockery but for substantial relief.   With its reasons however we have now nothing to do.   Good or bad it is too late to contest the conclusion.   The court having the complainant's status before it, adjudged it to be a creditor, and the judgment on that fact is not open to further question.

Nor do we think the equities of the other creditors superior to that of the appellant.   The wrong done to it was in 1882, long before the insolvency of the company and before many of the debts to the other creditors were incurred.   It is true that the capital stock of a corporation is a trust fund for the security and payment of creditors and that stockholders as such cannot withdraw or diminish any part of it.   But it is liable for the obligations of the corporation, including those growing out of its torts, and equally in this latter respect to stockholders

as to others.   The appellant had been practically ousted from its position as a stockholder long before the insolvency and the protracted litigation had postponed its reinstatement until it would have been of no value.   As already said, if the right to the stock had been abandoned, and damages claimed for the conversion, there could have been no question of the appellant's position as a creditor, nor would it have been of any avail for the other creditors to set up the diminution of their dividend. That is a disadvantage to them that always happens when another creditor comes in to take part of a fund insufficient to pay those already claiming it.   The case is no different when a court of equity having the facts before it determines the status of an ousted stockholder to be that of a creditor, and grants relief in damages for an act antecedent to the insolvency, in the same manner that a court of law would have done if the suit had been for the tortious act in the first instance.   When the assignment was made the wrongful act had been committed, and the relief to be given was under consideration by the court of equity, and the assets passed to the assignee for the benefit of the creditors, subject to the complainant's claim and the relief the court might give it.   When the court determined that such relief should be by compensation in damages it was doing equity by giving the only relief that would be substantial, and the other creditors had no ground of complaint that a claim as old and as meritorious as their own, had been put upon an equality with theirs, although it grew in the first instance out of a wrong done to the complainant as a stockholder.

Decree reversed, and it is ordered that appellant's claim be reinstated and allowed.   The costs to be paid out of the fund.