THE SECOND NATIONAL BANK OF GRAND FORKS *vs.* THE FIRST
NATIONAL BANK OF ST. THOMAS.

Opinion filed June 4th, 1898.

Opinion filed on rehearing October 7th, 1898.

**Attachment of Pledged Property.**

> The interest of a pledgor in certain bank stock that he had pledged
> as collateral security for certain indebtedness was subject to seizure
> in attachment proceedings and sale on execution against such pledgor
> under the provisions of sections 5363, 5366, Rev. Codes.

**Transfer of Pledged Stock Upon the Books.**

> Certain bank stock was pledged by the owner as collateral security
> to a debt owing by him to the pledgee, and an absolute assignment
> of the certificate given. Three years thereafter the pledgee presented
> the certificate to the bank, and demanded a transfer of the stock on
> the books, which was refused. Thereupon the pledgee brought an
> action against the bank, asking that the bank be required to make such
> transfer, or, on failure, that plaintiff have judgment for the value
> thereof. *Held,* that plaintiff's money recovery must be limited to its
> special interest in the property, not exceeding the value of the property,
> and that before any money judgment could be entered in its favor it
> was incumbent upon it to establish such special interest.

**Rights of Pledgee—Burden of Proof.**

> And *held,* further, that the pledgee was not entitled as against the
> bank, which was the owner of the pledgor's interest in the stock, to
> have the same transferred to it on the books of the bank until it
> established some beneficial interest in the stock. Wallin, J., dissenting.

Appeal from District Court, Pembina County; *Sauter, J.*

Action by the Second National Bank of Grand Forks against the
First National Bank of St. Thomas. Judgment for plaintiff. De-
fendant appeals.

Reversed.

*Bosard & Bosard,* for appellant.

*Burke Corbet,* for respondent.

BARTHOLOMEW, J. These parties plaintiff and defendant are na-
tional banks. The controversy is over ten shares of the stock of
the defendant bank. This stock was originally issued to one Clarke
in one certificate. Plaintiff, claiming to be the owner of the stock
by virtue of an assignment to it by Clarke of the said certificate
presented the certificate, so assigned, to the defendant bank, and
demanded that the said stock be transferred to it on the books of
the defendant bank, and a new certificate of stock issued and de-
livered to it. This the defendant bank refused, claiming to be the
owner of said stock by virtue of a purchase upon an execution sale
against the said Clarke. It is undisputed that Clarke was indebted
to the defendant in the sum of about $2,500, and that defendant

brought an action against Clarke on such indebtedness, and caused a writ of attachment to issue against his property, under which his interest in the stock was seized, and subsequently sold, on an execution issued upon the judgment obtained in such action, and defendant purchased the same. No objection is made to the regularity of these proceedings, but it is claimed that Clarke had no attachable interest in the stock by reason of the fact that it appears that in June, 1893, said Clarke pledged said stock to plaintiff as collateral security for an indebtedness due from Clarke to it, and executed to plaintiff an absolute assignment of the certificate of stock. But section 5363, Rev. Codes, declares: "When property is pledged or mortgaged for the payment of money or the performance of any contract or agreement, the right and interest in such property of the person pledging or mortgaging the same may be attached and sold on execution, and the purchaser at such sale shall acquire all the right and interest of the defendant therein." It follows that under said section Clarke's interest in the stock, whatever it may have been, was subject to seizure and sale, and that such interest became vested in the defendant. In other words, whenever the indebtedness to which the stock was collateral in plaintiff's hands was extinguished, the defendant would be entitled to the stock.

By reason of defendant's refusal to transfer the stock as requested by plaintiff, this action was brought, wherein plaintiff asked that defendant be compelled to transfer the stock and issue the certificate as required, and, in case of failure so to do, that plaintiff have judgment for the value of the stock. The facts render this case peculiar. We find many cases in the books where the pledgor has brought an action against the pledgee for conversion of the pledged property. But, as the pledgee is always in possession of the pledged property, it is ordinarily impossible that the pledgor, or one standing in place of the pledgor, should convert the property to the damage of the pledgee. But, as the wrongful refusal of a corporation to transfer its stock on demand renders such corporation liable for the value thereof (*Doty* v. *Bank,* 3 N. D. 9, 53 N. W. Rep. 77, and cases cited), it follows that in this case that which is ordinarily an impossibility becomes possible.

The trial resulted in a judgment for plaintiff for the value of the stock. There has been much diversity of procedure in cases where a transfer of corporate stock on the books of the corporation has been refused. Mandamus has sometimes been applied for and granted to compel such transfer. *People* v. *Crockett,* 9 Cal. 112; *Turnpike Co.* v. *Bulla,* 45 Ind. 1; *State* v. *First Nat. Bank of Jeffersonville,* 89 Ind. 312; *People* v. *Goss & P. Mfg. Co.,* 99 Ill. 355. We are clear, however, that the weight of authority is against the issuance of the writ, except under special circumstances. *Shipley* v. *Bank,* 10 Johns. 484; *Murray* v. *Stevens,* 110 Mass. 95; *Stackpole* v. *Seymour,* 127 Mass. 104; *Birmingham Fire Ins. Co.* v.

*Com.,* 92 Pa. St. 72; *State* v. *People's Building & Loan Ass'n,* 43 N. J. Law, 389; *Freon* v. *Carriage Co.,* 42 Ohio St. 30; *Tobey* v. *Hakes,* 54 Conn. 274, 7 Atl. Rep. 551. All of these cases are placed expressly upon the ground that the party seeking the remedy has an adequate remedy at law in an action for damages. In many cases, however, a suit in equity to enforce a transfer has been sustained. *Iasigi* v. *Railroad Co.,* 129 Mass. 46; *Cushman* v. *Jewelry Co.,* 76 N. Y. 365; *Walker* v. *Railroad Co.,* 47 Mich. 338, 11 N. W. Rep. 187; *Johnson* v. *Brooks,* 93 N. Y. 337. While these cases announced the principle that a court of equity will entertain an action to enforce the transfer, yet they place it upon the ground of the inadequacy of the common-law remedy in those particular cases. Other cases, however, affix no such limitation upon the equitable jurisdiction to enforce performance. *Bank* v. *Roden* (Ala.) 11 South. Rep. 883; *Railroad Co.* v. *Fink,* 41 Ohio St. 321; In re *Reading Iron Works* (Pa. Sup.) 24 Atl. Rep. 202. And in the *Bank* v. *Roden* and *Reading Iron Works* cases it was held that the prayer might be in the alternative, as in this case. But no question of practice was made in this action. But an action at law for damages is an old and well established remedy of a stockholder in cases of this kind. Cook, Stocks & S. § 392, and cases cited. In such an action the damages are measured by the value of the stock at the time of the demand of the transfer and the refusal. All the cases treat the wrongful refusal to transfer as a conversion, where the stockholder elects to sue for damages. In this case plaintiff has recovered a judgment, according to the findings and the evidence, for the full market value of the stock. But the Court also finds, and such finding is well supported by the evidence, that the stock in controversy was delivered by Clarke to plaintiff on January 5, 1893, as collateral security to an indebtedness then due and owing from said Clarke to the plaintiff. But it will be remembered that plaintiff brought its action as owner, and it proved the execution of the assignment of the certificate to it by Clarke, introduced such assignment, and rested. The fact that plaintiff held the stock as collateral to Clarke's indebtedness to it was shown by the undisputed testimony introduced by defendant. As to whether or not such debt, or any part of it, existed at the time of the trial of this action, in January, 1897, the record is entirely silent. All that we know about the debt comes from the testimony of defendant's cashier relative to a statement made to him by plaintiff's cashier. He testified: "He told me or gave me to understand that they held this as collateral security; that Clarke was owing the bank about six thousand dollars, and this stuff, with some other, was collateral security." As to what has been done with the other security, and as to the present condition of the debt, if any there be, we know nothing. But as plaintiff had not the absolute, but only a special, interest in the stock, its measure of damages was not, necessarily, the value of

the stock, but the value of its special interest therein, which would be measured (speaking without reference to the other security) by the indebtedness to which it was collateral, but not exceeding the value of the property. *Kasper* v. *Walla,* 49 Neb. 288, 68 N. W. Rep. 476; *Seibold* v. *Rogers,* 110 Ala. 438, 18 South. Rep. 312; *Sheehan* v. *Levy,* 1 Wash. St. 149, 23 Pac. Rep. 802; *Sherman* v. *Finch,* 71 Cal. 68, 11 Pac. Rep. 847; *Ganong* v. *Green,* 71 Mich. 1, 38 N. W. Rep. 661; Rev. Codes N. D. § 5002. It is true there is some general language in the books indicating that a pledgee may recover the full value of the stock. See Coleb. Collat. Sec. § 272. But the authorities that sustained that proposition · as to a pledgee are cases where the debt exceeded the value of the stock, or where the measure of damages was in no manner raised. We do not believe that the authorities ever intended to make this class of cases exceptional or to depart from the broad general rule of compensation; and certainly this must be true where, as in this case, the party against whom the damages are sought is the party who would be entitled to the surplus over the amount of the indebtedness secured. Of course, we are not speaking of the damages in conversion by a stranger.

Regarding this action, as we must, as an action to recover damages for the wrongful conversion of property in which plaintiff had only a special interest, if anything, as a pledgee, it was incumbent upon plaintiff to establish the amount of such special interest. We think it failed to do this. If it has complied with this requirement, it must be found in the single fact that the proof that it held the stock as collateral came from an admission of the cashier, and coupled with that admission, and as a part of it, was the statement that Clarke owed the plaintiff bank about $6,000, and the bank held this stock and other property as collateral thereto. It will be conceded that this admission must be taken as a whole, and that it establishes, prima facie, that at one time Clarke owed plaintiff bank about $6,000. But this stock was transferred by Clarke in January, 1893, the admission was made in December, 1894; and the case was tried in January, 1897. Does the admission establish an indebtedness from Clarke to plaintiff at the time of the trial? We think not. We recognize the rule that in actions upon contract for the recovery of money, where the making of the contract is admitted and the defendant relies upon payment as a defense, such defense must be specially pleaded. It is also true that the burden of proving payment always rests upon the party pleading it. But these principles are not applicable here. This plaintiff is not suing on contract, but in tort. The burden is upon it to establish, affirmatively, every proposition necessary to sustain a judgment in its favor. And whatever might be the presumption of payment or nonpayment as between Clarke and plaintiff, as against this defendant, who had no connection with the contracts between those parties, no presumption of nonpayment, after the

lapse of all these years, should be indulged. The party on whom rests the duty of payment always knows whether he has performed that duty or not. It is no hardship to cast upon him the burden of showing payment. But it would be impracticable, and probably impossible, for this defendant to show the state of the account between the plaintiff bank and Clarke, who, the evidence shows, was, at the time of the transactions out of which this action grew, an officer in the plaintiff bank. On the other hand, plaintiff knowns whether it has been paid or not. It could reveal the facts instantly, and, upon plain principles of common justice to the defendant, it was bound to do so. But it was silent. While the possession of the collateral may ordinarily be some evidence that the debt is not paid, because in the usual course of business collaterals are taken up when the debt is paid, yet in this instance no importance whatever can be attached to that circumstance. Whatever interest the pledgor had in those collaterals after he had pledged them had passed to the defendant by virtue of the execution sale. He had no interest in taking them up, and the defendant at all times denied plaintiff's right of possession, because no transfer had been made on their books. There was neither evidence nor circumstances raising a presumption of any existing indebtedness when this case was tried. It is true we have found no case holding squarely that it was incumbent upon plaintiff to establish an existing indebtedness, but, in all the cases where the record shows anything on the subject, the plaintiff introduced evidence for that purpose. In *Case* v. *Bank,* 100 U. S. 446, the trial Court instructed the jury that, in order to enable the plaintiff to recover, the jury must be satisfied from the evidence that the debt of the owners of the stock was still due and unpaid, and that if that had not been established the jury must find for the defendant. As the jury found for the pledgee, it was not necessary for the appellate Court to discuss the instruction. In *Dayton Nat. Bank* v. *Merchants' Nat. Bank,* 37 Ohio St. 208-216, the necessity for the ascertainment of the amount for which the stock is held as collateral is also announced. This must be true on general principles; otherwise a Court could never enter an intelligent judgment in plaintiff's favor,—a judgment that would satisfy the great principle of compensation.

As plaintiff failed to show any existing indebtedness, it failed to show any present interest in the stock; hence it cannot ask a Court of equity to decree a transfer to it. The fact that plaintiff, knowing itself to be a pledgee only, brought this action as an absolute owner, trusting evidently to its assignment, and the further fact that, after the evidence showing that it held the stock as collateral only had been introduced in the case, it offered no word explanatory of the nature and extent of its holding, are very significant to our minds as to the merits of the claims of the respective parties. Possibly, on another trial, plaintiff might supply the missing

testimony, but we have no power to order a new trial in this case. We are required to order final judgment. The District Court will set aside its former judgment herein, and enter a judgment dismissing the complaint.

Reversed. All concur.

### ON REHEARING.

After the foregoing opinion had been handed down, respondent, on notice, moved this Court for an order remanding the record for amendment. Subsequently, by stipulation, a certificate of the trial judge was filed in the case, to be treated as a part of the original record. From that certificate it appears that, while the testimony in the case was heard by the Court on January 30, 1897, and each party, after the testimony was closed, moved for judgment in its favor, yet the Court took the motions under advisement, and did not then decide the case. Subsequently the respondent was given the privilege of introducing further testimony. No such testimony was ever introduced or offered. Respondent did offer an amendment to its complaint, which the Court disallowed. But the findings of fact were not signed by the judge, or judgment entered, until October 7, 1897. Under this amended record, a rehearing was ordered, and respondent now asks that the former order entered by this Court be vacated, and an order entered directing a new trial in the Court below. Chapter 5, Laws 1897, amends section 5630, Rev. Codes, and confers upon this Court the power to order a new trial in cases tried by the Court where this Court deems such a course necessary to the accomplishment of justice. It may be conceded that this is a proper case for the exercise of that power if the case be covered by the statute. The last sentence of the section, as amended, reads: "This statute shall apply only to cases hereafter tried." The statute was approved on March 12, 1897, and went into effect on July 1st of that year. Was this case tried after that statute went into effect? Our statute (Rev. Codes, § 5419), declares: "A trial is the judicial examination of the issues between the parties, whether they are issues of law or of fact." But what constitutes a judicial examination of the issues of fact? In *State v. Hazledahl,* 2 N. D. 521, 52 N. W. Rep. 315, this Court, in construing a statute in the Code of Criminal Procedure, held that the "trial" began after the jury was sworn, and ended with the charge of the Court to the jury. But, as there stated, a broader signification is sometimes given to the word, and it is used to include all the steps taken in a case prior to final judgment. *Jenks* v. *State,* 39 Ind. 9. Again, a "trial" has been defined as "the examination before a competent tribunal, according to the law of the land, of the facts or law put in issue in a cause for the purpose of determining such issue." *Anderson* v. *Pennie,* 32 Cal. 267; *Bullard* v. *Kuhl,* 54 Wis. 544, 11 N. W. Rep. 801. We do not think that under any of these definitions this case was "tried" after July

1, 1897. We are not concerned in holding that the hearing before the competent tribunal constitutes the trial and the whole thereof. That may not be technically correct. But we do assert that it constitutes a part, and a very important part, of every trial. In common parlance, both to the layman and the lawyer, it includes the whole trial. We speak of a case as having been "tried to the jury," or "tried to the Court," meaning simply that the evidence was produced and the arguments made before the jury or the Court, as the case may be. In this case the only examination of the facts before the Court that was ever had occurred on January 30, 1897. The parties then introduced their testimony and submitted their case. True, the case was reopened to permit plaintiff to introduce further testimony, but no such testimony was ever offered. The parties were never again before the Court, so far as the record discloses. It is also true that the findings were not made and filed until in October following. But, under these circumstances, it cannot, with any propriety, be said that the trial of this case was "conducted"—and that is only another form of saying that the case was tried—after July 1, 1897. Such a holding would do unmistakable violence to the plain language of the statute. Our former order must stand.

YOUNG, J. concurs.

WALLIN, J., (dissenting). I find myself unable to agree with the construction given by my associates to the last sentence of the act of 1897, which reads: "This statute should apply only to cases hereafter tried." In my judgment, based upon the facts as stated in the majority opinion, the trial of this action was pending on July 1, 1897, at which date the act became operative. True, there was no evidence actually offered after this date, nor were the pleadings amended, although a proposed amendment to the pleadings was offered by counsel, and thereafter disallowed by the Court. By an express order of the trial Court, the case was held open to permit counsel to offer evidence and submit proposed amendments to the pleadings. Nor did the trial Court render a decision, or file its findings of fact and conclusions of law, until after the law took effect, and not until October, 1897. These facts, from my point of view, make it entirely clear that at the time the act became a law the trial was progressing. Offering evidence and proposing amendments to pleadings are the ordinary incidents attending the trials of issues of fact, and while these proceedings are progressing or may lawfully take place it seems plain that the trial has not been concluded, whether it be pending before a Court alone or before a jury. This being so when the law took effect, the trial of this case was not a past event, i. e. the issues had not theretofore been tried. Moreover, in cases tried to the Court, it is a familiar rule of District-Court practice for the trial Court, after the evidence has been taken, in the exercise of judicial discretion, to reopen the case, and

receive further evidence, at any time prior to filing its decision. Under this method of trial, no cause tried in the District Court can be treated as concluded until the decision is filed. Hence, when the act of 1897 took effect, this case had not been tried, and this is true without reference to the express order of the Court holding the case open for the purpose of receiving further evidence and other purposes. By the construction of the act as made by my associates, it is made to read, in effect, as follows: "This act shall not apply to cases the trial of which was commenced prior to July 1, 1897." I cannot so read this statute. The act is amendatory of a statute which did not permit this Court, even in furtherance of the most obvious justice, to order a new trial in the Court below. The amendment of 1897, as its capital feature, removed this restriction, and it is therefore highly remedial in its nature, and as such should, under an established rule of construction, receive a very liberal interpretation, with a view of promoting the beneficent objects of statutes of this character. This amendment declares that the "Supreme Court may, if it deem such course necessary to the accomplishment of justice, order a new trial of the action." This power, it will be noticed, is much broader than the power to grant a new trial for the correction of errors occurring at the trial, as may be done in jury cases. It is conceded in the majority opinion that the ends of justice would be promoted by a retrial of the action. This is also emphatically my view of the record. Nor do I think the statute, when liberally construed, stands in the way of directing a new trial. At most, the statute is obscure in meaning, or, perhaps I should say, silent in its terms, with respect to a class of cases wherein the trial was progressing when the act took effect and was tried in part thereafter. If I am correct in the view I have taken of the language of this statute, a familiar rule of construction should be applied to ascertain its meaning. It is an elementary rule that where a statute is obscure in meaning or ambiguous in its terms, reference should be made to the general scope and purposes of the enactment, and from these endeavor to gather the meaning of those parts of the statute which are obscure or ambiguous. Under this rule, I think a new trial should be granted, because by so doing the remedy of the act can be made effectual in the accomplishment of justice, and, from my standpoint, to direct a new trial would not be to violate any language contained in the statute.

(76 N. W. Rep. 504.)