STATE OF NORTH DAKOTA, Defendant in Error, v. MARTIN O. HAZLEDAHL, Plaintiff in Error.

**Discharge of Juror During Trial—Information—Verification.**

1. In this state, when, during the trial of a criminal case, and before the case has been finally submitted to the jury, a juror becomes sick and unable to sit further in the case, the court may order such juror discharged, and a new juror sworn to complete the panel, and that the trial begin anew; or the court may discharge the entire jury, and then or subsequently impanel another jury to try the case.

2. When the first course is pursued, the prisoner is not thereby entitled to again exercise all the peremptory challenges given him by statute, or to peremptorily challenge any one of the eleven remaining jurors; and in procuring the new juror the prisoner may exercise only such of his peremptory challenges as he has not already exhausted in procuring the other eleven jurors.

3. The information was filed by the state's attorney under chapter 71, Laws 1890, and verified by the state's attorney, as follows: "That the allegations therein contained are true to his best knowledge, information, and belief." *Held*, that the information was sufficiently verified. Whether such verification is sufficient when made as a foundation for a warrant of arrest, or when made by a person other than the state's attorney, not decided.

4. Where the information was not entitled in an action, and it nowhere appears by the information that the defendant was prosecuted in the name or by the authority of the state of North Dakota, proper and timely objection to the information being made, *held*, that the information was invalid, for the reason that it did not conform to the requirements of § 97, article 4, of the state constitution, which contains the following language: "All prosecutions shall be carried on in the name and by the authority of the state of North Dakota."

(Opinion Filed May 31, 1892.)

*E*RROR to district court, Richland county; Hon. W. S. LAUDER, Judge.

*M. A. Hildreth,* for plaintiff in error.   *C. A. M. Spencer,* Atty. Gen., for the State.

Prosecution against Martin O. Hazledahl for embezzlement. Verdict of guilty, and judgment thereon. Defendant brings error. Reversed.

The opinion of the court was delivered by

WALLIN, J. The plaintiff in error was convicted of the crime of embezzlement, and sentenced to a term in the penitentiary at Bismarck. The bill of exceptions embraced in the record shows that, after the jury had been sworn, and a portion of the testimony introduced, a juror was taken sick, and was unable to sit further on the jury. The court thereupon made an order discharging such juror, entering the reasons therefor in the order, and directed that a new juror be called and duly sworn as a juror in the case, and that the trial of the case begin anew. In the formation of the original jury plaintiff in error had used nine of the ten peremptory challenges to which he was entitled under the statute. When a new juror was called into the box he was peremptorily challenged by the plaintiff in error, and such challenge allowed by the court. The second juror called was likewise challenged, and the challenge disallowed by the court, to which ruling plaintiff in error duly excepted. Such juror was sworn and served as a juror in the case.

Section 7401, Comp. Laws, reads as follows: "If before the conclusion of a trial a juror becomes sick, so as to be unable to perform his duty, the court may order him to be discharged. In that case a new juror may be sworn, and the trial begin anew, or the jury may be discharged, and a new jury then or afterwards impaneled." Under this section plaintiff in error contends that upon the discharge of the sick juror he was entitled to all his challenges, both as to the eleven jurors remaining in the box and the new jurors called, the same as though no jury had been previously selected. This section appears in our territorial Code of 1877, and is an exact copy of a section in the California Code of Criminal Procedure. We have not found the statute elsewhere. Subsequent to its adoption by the territory of Dakota it was construed by the supreme court of California in People v. Stewart, 64 Cal. 60, 28 Pac. Rep. 112, and later in People v. Brady, 72 Cal. 490, 14 Pac. Rep. 202. The construction placed upon the section in those cases fully sustains the position taken by the learned counsel for the plaintiff in error. But under the circumstances, the case comes before us as an original question. Many provisions in our statutes were

copied from California, and in their construction our labors have been greatly assisted by the opinions of the very able and painstaking court of that state, but in this instance we are unable to follow where that court leads. In Stewart v. People, the court say: "What is implied by the clause, 'and the trial begin anew?' The title of the chapter which provides for the challenging the jury is: 'Of proceedings after the commencement of the trial and before judgment.' We think, within the meaning of the Code, a trial commences when the case is called for trial, unless the trial is then postponed; that everything that transpires in the case after that and before judgment is a part of the trial. That being so, it follows that the defendant was entitled after the change had been affected, to all the challenges which the law gave him in the first instance. Within that limit he not only had a right to challenge the new juror but likewise any or all of the original eleven." To our minds that reasoning goes too far. If the word "trial" in the phrase "and the trial begin anew" includes everything from the time the case was called, then, necessarily, the names of the remaining eleven must go back in the clerk's box to be redrawn. There cannot be eleven jurors in the jury box when the case is called. If the trial is to "begin again" at the calling of the case, necessarily the jury must be impaneled again, and of course must first be discharged from the prior panel. And we think the reasoning in People v. Stewart leads to that result unmistakably. If the accused has the right to challenge any or all of the remaining eleven, then it must be true that there is not an accepted juror in the box. But there were twelve accepted jurors before the one was taken sick, and they could only be relieved from that condition by being discharged. Hence, in every case the practical effect of discharging the one sick juror is to discharge the entire jury under that construction. But that could not have been the intent of the legislature, because in the same connection it is provided that the court may discharge the sick juror, and swear another to fill his place, or may discharge the entire jury and impanel another. It does not meet the point to say that, unless the accused challenges the remaining eleven, or some of them, they retain their character as jurors. That would always place

it in the power of the accused to discharge the entire jury or not, at his election. The law places the election with the court. Moreover, the character of juror cannot attach while the right to challenge remains. Under the English practice when, during the progress of a trial, a juror becomes sick and unable to sit, the jury is always discharged. The names of the eleven men are immediately recalled, and another name taken from the panel to complete the number. The accused is then given all his challenges to the twelve, after which each juror or the person substituted by the challenge must be sworn *de novo.* See Whart. Crim. Pl. & Pr., note to § 508. It thus appears that in England, where the jury is always discharged, the process is precisely the same in effect that is announced in People v. Stewart, when the jury is not discharged.

The word "trial" is sometimes used in a broad sense, including all the steps taken in a case prior to final judgment, but in its restricted sense it includes the investigation of facts only. Jenks v. State, 39 Ind. 9. We think it is used in the restricted sense in the statute under construction. Our statute defines a trial to be "the judicial examination of the issues between the parties, whether they be issues of law or fact." Comp. Laws, § 5031. A jury trial would be the examination of an issue of fact. The first definition of the word "trial" in Anderson's Law Dictionary is: "The examination of the matter of fact in issue." Mr. Wharton, in his note on the English practice, already cited, after stating that the jury must be sworn *de novo,* and charged with the prisoner, adds: "The trial must then begin again." We think that generally where the word "trial" is used in connection with the jury it means the examination of the issue of fact. The sequence of the wording of the statute would indicate that it is so used. It says: "A new juror may be sworn, and the trial begin anew." The trial begins anew after the new juror is sworn. The statute uses the singular number—"juror;" neither "jurors" nor "jury." Under our practice jurors are sworn separately. Territory v. O'Hare, 1 N. D. 30. We think the statute clearly intends that when the sick juror only is discharged the condition of the remaining eleven is not affected. They stand as accepted and

sworn jurors, subject to no challenge, and but one other man is to be sworn as an additional juror to complete the panel. The condition of the jury after the discharge of the sick juror is identical with its condition when but eleven jurors had been secured. The word "trial," as used in the first part of said § 7401, is certainly used in the restricted, and not the broad, sense. It says, "If before the conclusion of a trial," etc. Turning to § 7413, we find what course is to be pursued if a juror is taken sick after the jury has retired. Certainly the "trial" mentioned in § 7401 terminates with the termination of the investigation of the facts, otherwise § 7413 would be superfluous. This indicates that the word "trial," as used in § 7401, is restricted in its significance to the investigation of the facts, commencing after the jury is sworn and ending with the charge of the court. The meaning of the word is so limited by both § 7401 and § 7413. This construction deprives the accused of no constitutional right, and involves no hardship. In securing the twelfth juror he may, as he always may, use any peremptory challenges that he has not already exhausted in procuring the eleven. If he has already exhausted all his peremptory challenges, then, in this case, as in every other, the first man called against whom no challenge for cause can be interposed must be sworn as a juror. But the accused exhausted no peremptory challenges in disposing of the sick juror. He has used all the peremptory challenges which the statute gives him in securing the jury of twelve men by whom he is tried, and he has no ground for legal complaint. We think it radically unsound to assume that the legislature intended to place the accused, so far as his peremptory challenges were concerned, in the same position when one juror was discharged as when twelve men were discharged. To prevent all possibility of prejudice to accused parties, the statute has given the trial court full discretion to discharge the entire jury, and we must presume the court will adopt that course in all cases when there could be a suspicion of prejudice to the rights of the prisoner in adopting the first course. We think the trial court committed no error in the formation of the jury.

Two other errors are assigned, both arising upon the information upon which defendant was tried, viz.: (1) That the information was verified upon "information and belief," and was not verified positively; (2) that the information omits to state in terms or in any other manner that the prosecution of the defendant is instituted either in the name or by the authority of the state of North Dakota. We think the assignment of error relating to the verification of the information is not well taken. The statute allowing an information to be filed in lieu of an indictment in criminal cases (§ 3, chapter 71, Laws 1890) declares: "The state's attorney, prosecuting witness, or some other person shall verify the information." The manner of verification is not prescribed in the statute, nor does the statute expressly provide, as is the case in the statute regulating verifications in civil cases, that an attorney may in certain cases verify a pleading to the effect that the same is true to his "best knowledge, information, and belief." But, inasmuch as the statute allows the state's attorney to verify the information in all cases, it would, in our opinion, be unreasonable to say that that officer must swear to the information positively and without qualification in all cases. We think such a construction would, in a majority of cases, necessarily prevent a verification by the state's attorney, and in not a few cases prevent a verification by any witness; in which event, of course, no information could be filed, as all informations are required by the statute to be verified. It rarely occurs that the state's attorney has such personal knowledge of the essential facts of a crime as will permit him to swear to their existence in positive and unqualified terms. In many cases the crime can only be proven as a result of the testimony of several witnesses, each giving testimony as to separate links in the chain of evidence necessary to convict. In such cases no witness would be prepared to testify to all the essential facts constituting the crime positively and without qualification. This view is sustained by the Michigan cases. Mentor v. People, 30 Mich. 91; Washburn v. People, 10 Mich. 372. See, also, State v. Montgomery, 8 Kan. 351; State v. Nulf, 15 Kan. 404. We think the verification sufficient, and hence overrule the assignment of error on that point. But we limit

the decision to the facts of this case, and do not wish to indicate in advance what we should hold in a case where it appeared that the information had been verified on information and belief as a foundation for issuing a warrant of arrest, or by a witness or person other than the state's attorney, or in a case where no preliminary examination had been held or waived.

The remaining assignment of error presents a question of great difficulty. The information was first attacked by a motion to set it aside, and, that motion being denied, defendant demurred to the information, and the demurrer was overruled. Subsequently the defendant moved the court to arrest the judgment. In all these modes of assailing the information defendant's counsel claimed, among other things, that the information is invalid, because it does not appear by the information that the prosecution of this defendant is carried on either in the name of the state of North Dakota or by its authority. The information is not entitled in·an action in which the state appears as a party, nor in any action, nor does the information aver in terms or indirectly that the defendant is prosecuted either in the name or by the authority of the state. It does appear on the face of the information that it was filed by the acting state's attorney of Richland county in the district court of said county·and state of North Dakota. In support of his contention defendant's counsel cites § 97, art. 4, of the state constitution, which contains the following language: "All prosecutions shall be carried on in the name and by the authority of the state of North Dakota." In support of the information the attorney general cites the case of City of Davenport v. Bird, 34 Iowa 525. This case is one where the city prosecutes under its charter for violating a city ordinance forbidding loud and unusual noises in the streets. The supreme court of Iowa, construing a section of the constitution of Iowa substantially like that above quoted, say, in effect, that such prosecution is not one which should be had in the name of the state, because the language in the constitution does not relate to such prosecutions, but has reference wholly to cases brought in the courts established by the constitution, and for offenses arising under the criminal laws of the state. For this reason the prosecution

was sustained, but the court say further: "It is fitting and appropriate that prosecutions for the violation of criminal laws of this state should be carried on in the name of the government." We think the case tends to sustain the position of defendant's counsel. See Sain v. State, 14 Tex. App. 144; note to 10 Amer. & Eng. Enc. Law, p. 708; Jefferson v. State, 24 Tex. App. 535, 7 S. W. Rep. 244; Hay v. People, 59 Ill. 94; Gould v. People, 89 Ill. 216; Calvert v. State, 8 Tex. App. 538; Donnelly v. People; 11 Ill. 552. The omission in the information could, before trial, on leave of court, have been readily supplied by amendment, (10 Amer. & Eng. Enc. Law, p. 709) but nothing appears in the record showing that leave to amend was asked by the prosecutor. We are aware that the caption or commencement of indictments and informations is merely preliminary and formal, and not a part of the accusation proper, and hence courts have gone a great length in construing such formal parts, and have uniformly held that informalities and omissions in them are curable by amendment, and comparatively of small account, inasmuch as they cannot prejudice the substantial rights of the accused upon the merits. But in the case at bar the omission to state, either directly in the information or indirectly by means of entitling it in an action, that the prosecution of the case is carried on in the name of the state and by its authority, is nothing less than a plain violation of the explicit mandate of the state constitution. It may be that the requirement is formal and arbitrary, and that to disregard it would not prejudice the defendant in his substantial rights; but we do not feel at liberty to completely ignore any provision of the organic law. On the contrary, our duty is to give effect to all of its terms. Our conclusion is that the information in this case is invalid, because it does not conform to the requirements of the state constitution. An indictment, moreover, is required, among other things, to contain the title of the action specifying "the names of the parties." § 213, Code Crim. Proc.; § 7241, Comp. Laws. Informations are to be tested, as near as may be, by the statutes regulating indictments. Chapter 71, Laws 1890.

Defendant objected to being tried before the new jury impaneled after the discharge of one of the original jurors on account of his illness, and based his objection upon the theory of a former jeopardy. But the discharge of the juror, when he became unable to perform his duties, was entirely proper, as it was occasioned by an obvious legal necessity. In such cases, the plea of former jeopardy cannot be allowed under the modern decisions. What. Crim. Pr. & Pl. (9th Ed.) § 508, and cases cited. The judgment will be reversed, and a new trial ordered. All concur.