## STATE *vs.* HASLEDAHL.

Opinion filed Nov. 4th, 1892.

**New Information Filed to Cure Defects Without New Preliminary Examination.**

Where an information was adjudged defective by the Supreme Court because it did not state that the prosecution was in the name and under the authority of the state, and the case was reversed, *held*, it was not error for the trial court to make an order allowing the state's attorney to file a new information curing the defect, without a new preliminary examination of the accused.

**Presence of Accused not Necessary.**

The making of such an order is no part of the trial, within the meaning of § 7321, Comp. Laws, providing that the defendant must be personally present at the trial when the offense is felony, and it is therefore not necessary that defendant should be personally present when such order is made.

**Harmless Error.**

If notice to defendant or his counsel of application for such order was necessary, the error, if any, in failing to give such notice, was error without prejudice. For such an error there can be no reversal. Section 7588, Comp. Laws.

**Weight and Sufficiency of Evidence.**

Evidence examined, and *held* sufficient to warrant a conviction.

Error to District Court, Richland County; *Lauder*, J.

Martin O. Hasledahl was convicted of embezzlement and brings error.

Affirmed.

*M. A Hildreth*, for plaintiff in error.

*C. A. M. Spencer*, Attorney General; *S. H. Snyder*, State's Attorney, and *W. E. Purcell*, for the state.

CORLISS, C. J. The plaintiff in error has been twice convicted of embezzlement. The conviction on the former trial was reversed because of a defect in the information. *State* v. *Hasledahl*, 2 N. D. 521; 52 N. W. Rep. 315. It failed to show on its face that the prosecution was in the name and by the authority of the State of North Dakota. After the case was remanded, the District Court made and entered and order directing the state's attorney to file

a new information to obviate the technical defect in the former one. Such a new information was filed. It was in all respects practically the same as the former information, with the exception of a statement that it was filed in the name and by the authority of the State of North Dakota. It is urged that it was improper to allow this information to be filed as the basis of a criminal prosecution without a new preliminary examination. That there had been such an examination before the defective information was filed is undisputed. That this examination was sufficient in all respects to warrant the filing of an information for the offense charged in the new information filed is uncontroverted. Why it should be necessary to re-examine the accused before a committing magistrate, in order to correct a technical defect not in the proceedings on such examination, but in an information filed thereafter, it is difficult to understand. The language of the statute does not require it, nor does the spirit of the law demand it. The main purpose of the provision requiring such an examination before the state's attorney shall have power to file an information is to protect the citizen against the arbitrary action of that officer. The return of an indictment, only after an examination of evidence by a grand jury, guarantied the citizen, as a rule, against prosecutions without probable cause. This guaranty is perpetuated by the requirement that there shall be a preliminary examation before a committing magistrate. After such an examination has been had,—one sufficient to sustain an information,—it is idle to urge that the rights of the accused are in the least prejudiced by the filing, without a second preliminary examination, of another information to take the place of the former defective one,—to amend it wherein it was technically insufficient,—charging the same offense charged in the former information, and differing therefrom only by supplying a formal part omitted from the first information. No authority can be found to uphold such a contention. But we are referred to cases wherein it is held that, where an indictment is set aside as defective, the case must be resubmitted to the same or another grand jury; and in one case it

was held that the same grand jury could not return, without a re-examination of the witnesses, a second indictment, the former indictment having been quashed by the prosecuting attorney. These cases are not in point. In Ex parte Bain, 121 U. S. 1; 7. Sup. Ct. Rep. 781; the trial court, without the consent of the grand jury, amended the body of an indictment by expunging therefrom certain words, and it is apparent from the opinion in this case that the words were not regarded by the Supreme Court as mere surplusage. The words struck out by the trial court were, "The comptroller of the currency and." The gist of the charge was making a false report with intent to deceive the comptroller of the currency and others. The court said: "How can the court say that there may not have been more than one of the jurors who found this indictment who were satisfied that the false report was made to deceive the comptroller, but was not convinced that it was made to deceive anybody else?" It is elementary that the body of an indictment cannot be amended by the court without the consent of the grand jury. Whenever the accused is arraigned on such an amended indictment, he can plead that the grand jury have found no such indictment against him. The body that found the indictment has not amended it. But when an information is amended, as it may be, this objection cannot be urged against the amended information. The officer that presented the orignal information has amended it by either interpolating into the old one the amendment, or by filing a new one containiag such amendment. It has always been the rule that an information could be amended with leave of court, by the prosecuting attorney. 10 Amer. & Eng. Enc. Law, 709, note 1; Whart Crim. Pl. § 87. The decision in *State* v. *Ivey*, (N. C.) 5 S. E. Rep. 407, is confidently relied on by counsel for the plaintiff in error. In that case a bill of indictment was sent to the grand jury, and, upon examination of witnesses, it was returned a true bill. The solicitor of the state considering that it did not charge the offense committed, it was, on his motion, quashed; whereupon another bill was sent the grand jury, which was returned a true bill, without

any further examination of witnesses. It was held that the second indictment must be squashed. It will be noticed that in this case the first indictment was quashed. It was utterly annihilated. There was nothing to amend. Its destruction carried down with it the examination of witnesses before the grand jury. Such examination could have no separate existence apart from the indictment. No record of such examination is required to be, nor is it ever, kept. But the record of a preliminary examination is entirely distinct from the information, and can and does exist after the information is destroyed. But in the case at bar the information was not set aside. A demurrer was interposed to it. The demurrer was overruled. On writ of error, this court held that the demurrer should have been sustained because of the omission from the caption of words showing that it was filed in the name and under the authority of the state. The conviction was reversed. The case then stood as though the trial court had sustained the demurrer. That court made an order directing the filing of a new information to remedy the defect in the former one. This was equivalent to an amendment, and, as an information must be verified, it is perhaps the better practice to make an amendment in this manner; otherwise it can be said that the verification to the old information does not embrace the new matter interpolated into the information by amendment. As the information was not quashed, the preliminary examination was unaffected. It continued to stand, and it was therefore true that there had been a preliminary examination as a foundation for the filing of the amended information. The same conclusion is inevitable, if we regard the old information as set aside, and consider that an entirely new information was filed. Setting aside an information does not touch the preliminary examination. The foundation remains. Setting aside or quashing an indictment destroys the whole proceeding. There must be a new indictment found by the grand jury, and this necessitates a judicial investigation by that body. As the law contemplates no record of the examintion, as it does of a preliminary examination, the grand jury cannot refer

to such a record in finding the new indictment, but must begin the investigation as though no prior indictment had been found. It is on this principle that the Ivey case stands. No such principle is applicable to the case at bar. The Ivey case is not in point for another reason. In that case there was a radical change in the indictment, and not, as in the case at bar, a mere amendment of the caption. In the Ivey case, had there been a defect in the caption only, it is clear, upon authority, that the indictment could have been amended in that respect, not only by the grand jury, under the order of the court, but by the court without the presence, consent or knowledge of the grand jury. *McGuire* v. *State*, 72 Am. Dec. 124; *State* v. *McCarty*, 54 Am. Dec. 150; *State* v. *Creight*, 2 Am. Dec. 656; *State* v. *Jones*, 17 Am. Dec. 483; 10 Am. & Eng. Enc. Law, p. 536, note 3; 1 Bish. Crim. Proc. § § 661, 662. Indeed, there is authority for the proposition that an indictment may be withdrawn from the files, and recommitted to the same grand jury, who may amend it without a re-examination of witnesses. *State* v. *Davidson*, 2 Cold. 184. In the Ivey case this was not done. The old indictment was quashed on the motion of the prosecuting officer. There was nothing left to send back to the grand jury for amendment. The Ivey case does not decide that an indictment may not, on order of the court, be returned to the same grand jury, and be by them amended without further examination. But in the case at bar the body of the information has not been changed. There was a mere alteration in the caption. But, construing the information as a new one, there can be no question about the right of the state's attorney to file it under the order of the court, without another preliminary examination. It would, indeed, be singular if, when a demurrer to an information had been sustained for defects therein, no amendment thereof could be made, or the old one could not be supplanted by a new one correcting the error, without an entirely new preliminary examination. The quashing of the old information does not carry with it the preliminary examination. The preliminary examination is complete in itself, and entirely independent

of the subsequent proceedings. Irregularity in such proceedings cannot affect these anterior disconnected proceedings. The grand jury act judicially in making the investigation and in finding the indictment. The state's attorney, in filing an information, is governed by the record of a prior complete, independent judicial investigation similar to that made by a grand jury. When the trouble is not with this precedent examination, how can it be affected by a defect in subsequent proceedings? What error the state's attorney has made in proceedings subsequent to the preliminary examination, *i. e.*, the information, can no more touch the soundness of that examination than the former's subsequent error can affect a valid indictment based on a proper investigation. To make the authorities sustaining the necessity of a new examination to warrant a new indictment analogous, we must have a case presenting a defect in the proceedings before the committing magistrate, and not merely in the information. Is the power to file an information gone because an hour before a defective one has been filed and quashed on demurrer? Notwithstanding the fact that the valid information might have been originally filed an hour previous, must all proceedings be regarded as annihilated, and, in order to correct the error by filing such valid information, must it be deemed necessary to rearrest the accused, to conduct a new examination, and have him held a second time for the same offense, burdening him and the public with additional trouble and expense, and necessitating his giving a new bond, merely because the first information was technically defective? The duty of the state's attorney is to file such valid information as is warranted by the record of the preliminary examination, and, whenever a prisoner is arrainged under a new or an amended information, the only inquiry is whether it is a proper information, in view of the preliminary examination. It is strictly true, in such a case, that there has been and is a preliminary examination to support such an information.

It is urged that the evidence is insufficient to warrant a conviction. The plaintiff in error was charged with embezzling a sum

of money while in the employ of the National Elevator Company.
As such agent, he was authorized to purchase and sell grain for
such company, to collect the moneys due on sales, and to remit
the same to such company, or to use the same in making pur-
chases of grain for such company.    It was proved that in the
month of July, 1890, a car load of oats was shipped to him, and
that thereafter he sold oats to various farmers, and received from
them pay, partly in cash and partly in grain.    The books kept by
him disclosed no sale of oats after July 1st, 1890, although it was
his duty to keep a daily account of sales, purchases, etc.    Here
was evidence that he had been selling oats belonging to his
employer for cash, and had not accounted for the cash.    This was
sufficient to warrant his conviction for embezzling money of his
employer.    It is true that the accused testified that he used the
cash paid to him in the purchase of grain for the company; but
the jury were not bound to believe his testimony, for it appeared
that he was short in his accounts some 1,400 bushels of wheat, on
the theory of his making such purchases, and there was no
attempt on his part to explain why he failed to observe as to the
oats sold the usual mode of bookkeeping, i. e., charge himself with
the cash received for the oats sold.    It was his duty, under his
employment, to keep his accounts in this manner, and there is no
pretense that he failed to do so as to other items.    The objection
as to the admission of evidence showing that the accused was
short a large number of bushels of wheat and that he had no oats
on hand, was without merit, and was properly overruled.    It was
necessary to prove these facts in order to make out the offense of
embezzlement.    For that purpose the evidence was competent.    It
was not offered to prove that he had embezzled wheat or oats, but
to prove that he had not accounted for the proceeds of grain sold.
It is proper to treat the money received as the money of the
employer, and to charge the agent with the embezzlement of the
money, and not of the property.    The order allowing the filing of
the new information was made without notice to the accused or
his counsel, and in their absence.    In this we see no error.    The

making of such an order was no part of the trial, within the meaning of § 7321, Comp. Laws, which provides that, where the offense is a felony, the defendant must be personally present at the trial. *Epps* v. *State*, (Ind.) 1 N. E. Rep. 491, 493; *Boswell* v. *Com.*, 20 Grat. 860. The failure to give either the accused or his counsel notice of the application for this order, if notice was necessary, was without prejudicial effect upon the defendant. All objections which could have been interposed on the application for the order were raised and argued before both the trial court and this court, and both courts have heard him as fully on these points as if he had made the objections before the order was granted. If error, it was without prejudice, and for such an error there can be no reversal. Section 7588, Comp. Laws.

Certain requests to charge were made by counsel for the accused. Error is assigned because of the refusal of the court to give them. Without examining them in detail, it is sufficient to say that we have carefully considered the points, and are clear that no error was committed by the refusal to charge the jury as requested, nor was the exception to the charge well taken.

The judgment is affirmed. All concur.