STATE EX REL CITY OF FARGO v. MITCHELL, Treasurer, and HILDRETH, Intervener.

(139 N. W. 572.)

**Mandamus — issuance of bonds — defense — illegal application of proceeds.**

1. In a mandamus proceeding which is brought to compel a city treasurer to make the certificate required by § 2577, Rev. Codes, 1905, that bonds are legally issued and are within the debt limit of a city, an issue or defense is not pertinent or germane which is based upon the alleged illegality of a contract in payment of which the proceeds of said bonds may afterwards be applied.

**Mandamus — intervention — right of intervention — time.**

2. Under § 6825, Rev. Codes 1905, which provides that "any person may, before the trial, intervene in an action or proceeding, who has an interest in the matter in litigation, in the success of either party, or an interest against both, . . . filed by leave of the court," etc., it is not an abuse of dis-

cretion on the part of the trial court to refuse leave to intervene in a mandamus proceeding, after a general demurrer has been interposed to the answer in the case and argued by counsel, even though a decision has not been rendered thereon. Especially is this the case where the intervener has himself appeared as counsel for the principal defendant, and has been perfectly aware of all of the defenses which were made and intended to be made in the proceeding.

Opinion filed December 23, 1912.

Appeal by intervener from an order of the District Court for Cass County, *Pollock,* J., denying the right to intervene in mandamus proceedings to compel the principal defendant to certify the legality, etc., of the city bonds, as the treasurer of such city.

Affirmed.

Statement by BRUCE, J.

On July 6th, 1910, an election was held in the city of Fargo, submitting to the voters the question of the issue of city bonds for the construction of a pumping station and filtration plant, and necessary machinery and connections. The question submitted to the people was in the following form: "Shall the city of Fargo issue bonds in the sum of sixty-five thousand dollars ($65,000), bearing interest at the rate of 5 per cent per annum, for the purpose of paying the cost of machinery and materials for and the construction of a waterworks station and filtration plant, and making the necessary connections with the present existing water mains and water plant, and installing therein all necessary pumps, machinery, appliances, and apparatus for the erecting of the same, said plant and machinery to be used for the purpose of furnishing to the inhabitants of the city of Fargo a pure water supply, and for the purpose of fire protection for said city?" This proposition was carried and answered in the affirmative by a vote of 649 to 78. Bids were then called for by the city for the purchase of said issue of bonds, and on the 10th day of July, 1911, the city council accepted the proposal of the Minnesota Loan & Trust Company for the purchase of said bonds, and thereafter the mayor and city auditor of said city duly executed the same. Printed as an indorsement upon the bonds, however, and as required by law, was a certificate stating

in substance that said bonds were issued pursuant to law, and were within the debt limit of the city of Fargo. On the 5th day of November, 1911, this certificate was presented to Chas. H. Mitchell, the defendant and respondent herein, as treasurer of the city of Fargo, for his signature, it being necessary to have the signature of the city treasurer in order to make the bonds negotiable. Mitchell refused to sign the certificate without an order of the court, and an alternative writ of mandamus was obtained by the city of Fargo, requiring the said Mitchell to show cause why a peremptory writ should not be issued to compel him to sign the said certificate. In these proceedings the city treasurer filed an answer which alleged that there was pending in the district court of the county of Cass an action wherein one W. J. Price, a citizen and taxpayer of said city of Fargo, sought to restrain the officers of said city from carrying out the terms of a contact entered into by the said city with one James Kennedy for the construction of the filtration plant referred to, and that said action had not yet been determined, and alleging that in said action the validity of the said contract was attacked, and that the respondent verily believed that the issue of the bonds was illegal and void. The answer, however, specifically stated that the refusal of the treasurer to execute said bonds was "based upon the facts heretofore set forth, upon the .pendency of said action testing the validity of said *contract."* A demurrer was interposed by the city to this answer, and after argument the demurrer was sustained. In these proceedings, and in the argument on the demurrer, M. A. Hildreth, the intervener and appellant herein, appeared as counsel for the city treasurer. From the order sustaining this demurrer the respondent treasurer took and authorized no appeal. Thereupon, after the argument on the demurrer, but before a decision thereon, and again on the 9th day of September, 1911, M. A. Hildreth, for and on behalf of himself as a citizen and taxpayer and resident of the city of Fargo, prayed leave to intervene in the above entitled action, and to file an answer in the same, a copy of which answer was attached to the said petition. In this petition, and as a ground for his request for leave to intervene, said M. A. Hildreth alleged that "he was instructed to prepare, and did prepare, by the defendant in the above entitled action (the city treasurer), an answer which attacked the validity of certain reputed bonds amounting to $65,000, about to

be issued by the city of Fargo; that said answer was prepared on Thursday, the 7th day of September, 1911; that he was instructed and did prepare said answer after a full and complete consultation with Mr. Mitchell (the city treasurer),. in which said Mitchell agreed with your petitioner that the entire proceedings relating to the issue of said bonds was void; that afterwards, for reasons unbeknown to your petitioner, the said Mitchell refused to sign said answer, and instructed your petitioner, as his counsel, to draw an answer setting up, *and only setting up, the pendency of an action by W. J. Price against the city of Fargo and others;* that your petitioner repeatedly called Mr. Mitchell's attention to the fact that *the validity of said bonds was not attacked in said answer, and said Michell has refused to attack the validity of said bonds,* and that the proceeds thereof are to be used in the payment of a contract with one James Kennedy, which, as your petitioner avers, is absolutely void. Your petitioner says that, in behalf of the citizens and taxpayers of Fargo, of whom he is one, he, considering the question of so great importance in connection with the issue of said $65,000 worth of bonds to be used in payment of said illegal contract, referred to in Exhibit A, with said James Kennedy, and that said Mitchell would pay out the proceeds of said bonds if not prevented by this court, to the said James Kennedy under said contract, he prays this honorable court to be permitted to intervene in the above entitled cause, and file an answer hereto annexed as an answer in intervention." The answer attached to said petition for intervention contained no allegation whatsoever which in any way questioned the validity of the election in which the issue of the bonds was authorized by the electorate of the city of Fargo except in so far as the excess over the debt limit was concerned nor did it in any particular question the validity of the contract for the sale of said bonds to the Minnesota Loan & Trust Company. It merely alleged and charged "the fact to be as indicating the illegality of all the proceedings with reference to the issue of said bonds hereinafter to be referred to in this answer, that in violation of the law, on the 18th day of April, 1911, the said common council illegally passed a resolution extending the time for receiving bids for the filtration plant, well house, and pumping station, boilers, engines, etc., and that no sufficient notice of such extension was given to the bidders. It further alleged that the city

illegally employed one Burdick as an assistant engineer to aid said council in determining which was the lowest and best bid, and that later another illegal resolution was adopted which referred said bids to the city engineer with said assistant engineer, and to the members of the fire and water commission, to examine and report on the merits and value of the respective bids. It further alleged that on such report the council illegally and improperly purported to submit the report and determination of said bids, and then and there the common council of the city of Fargo, by resolution, illegally and improperly made and passed a resolution accepting the bid of one James Kennedy in the sum of $96,220, for the construction and erection of said water filtration plant, and thereupon, by such resolution illegally passed as aforesaid, did improperly and illegally authorize the proper officers of the city of Fargo to enter into said contract with said James Kennedy in accordance with said bid." The intervener further alleged "that said contract so made was absolutely void and of no effect; that it was neither made upon any proper basis of plans and specifications as required by law, or in accordance with resolutions instituted and regularly passed as a basis for said contract, nor, in the letting of said contract, comply in any respect with the terms and conditions of the purported plans and specifications, etc." It also alleged that the plans were so drawn as to prevent free and open competition, and that the advertisements for proposals were defective; that the bid of said James Kennedy was absolutely void, and that the common council of the city of Fargo and its officers were wholly without jurisdiction to enter into the said contract. It also alleged "that the said city and its officers, agents, and servants were wholly without jurisdiction and power to issue $65,000 of bonds bonding said municipality of the city of Fargo for the purpose of constructing said water filtration plant, and further in that behalf intervener, in his capacity as citizen and taxpayer of the city of Fargo, says that the purported issue of bonds is not within the debt limit of the city of Fargo, and is not a legal and valid issue of bonds within the meaning of the Constitution of the state of North Dakota and the statutes governing municipalities, and the provisions of law relating to the construction of waterworks for municipalities." It further avers that on or about the 31st

day of May, 1911, there was commenced, in the district court in and for the county of Cass, an action wherein W. J. Price, a citizen and taxpayer of the said city, was plaintiff, and the city of Fargo, a municipal corporation, et al., were defendants, to restrain the officers of said city, including the respondent as treasurer of the city of Fargo, and permanently enjoining the said officers and the said city, and each and all of them, perpetually from certifying and selling the bonds of said city to which reference is hereinbefore made, and from carrying out the terms of the alleged contract with said James Kennedy, and from payment of the cost of construction of said filtration plant, and from proceeding further with the construction and erection of said water filtration plant, and for such other and further relief as in equity the plaintiff might be entitled to; that there never has been any trial or determination of said action, but that the said city of Fargo has answered the said complaint, and, as respondent is informed and verily believes, said action is now pending." The answer in conclusion avers "that said Mitchell's refusal to sign said bonds in his official capacity or otherwise is based upon the facts heretofore set forth upon the pendency of said action testing the validity of said contract, the proceedings leading up to it, and the issue of said bonds as aforesaid, but said Mitchell refused to attack the validity of the issue of said bonds; that said action has never been determined, and, as intervener is informed and verily believes, that the proceedings relating to the letting of said contract and the issue of said bonds for the construction of said filtration plant as aforesaid are, and all of them, absolutely void and of no effect, and that the pretended issue of said bonds in the sum of $65,000 is illegal and void and of no effect, and would create an obligation beyond the power of the officers of said city to enter into, and of such a character as would be beyond the debt limit provided for in the Constitution, and create a great burden upon intervener and other taxpayers of said city."

*M. A. Hildreth*, for appellant.

Mandamus ought not to issue as an absolute matter of right. See Emmons County v. Thompson, 9 N. D. 607, 84 N. W. 385; High, Extr. Legal Rem. 307 and cases cited.

Bradford v. San Francisco, 112 Cal. 543, 44 Pac. 912; Adams v. Brenan, 177 Ill. 194, 42 L.R.A. 719, 69 Am. St. Rep. 222, 52 N. E. 314; Union P. R. Co. v. Hall, 91 U. S. 343, 23 L. ed. 428; People ex rel. Stephens v. Halsey, 37 N. Y. 344; Throop, Pub. Off. § 816; State ex rel. Graber v. Matley, 17 Neb. 564, 24 N. W. 200; Winn v. Shaw, 87 Cal. 636, 25 Pac. 968; Woodruff v. Welton, 70 Neb. 665, 97 N. W. 1037; Colorado Paving Co. v. Murphy, 37 L.R.A. 630, 23 C. C. A. 631, 49 U. S. App. 17, 78 Fed. 28; Crampton v. Zabriskie, 101 U. S. 601, 25 L. ed. 1070; Bailey v. Lawrence County, 2 S. D. 535, 51 N. W. 331.

Any interest is sufficient to give a right to intervene. Coffey v. Greenfield, 55 Cal. 382; Kimball v. Richardson-Kimball Co. 111 Cal. 386, 43 Pac. 1111; Dennis v. Kolm, 131 Cal. 91, 63 Pac. 141; People ex rel. Fogg v. Perris Irrig. Dist. 132 Cal. 289, 64 Pac. 399, 773; Bosard v. Grand Forks, 13 N. D. 587, 102 N. W. 164.

Petitioner should be permitted to intervene. State ex rel. Pfister v. Manitowoc, 52 Wis. 427, 9 N. W. 607; Eldridge v. Stockton, 39 Cal. 693; People ex rel. Mott v. Green County, 64 N. Y. 600; People ex rel. Duff v. Booth, 49 Barb. 31; Ricketson v. Milwaukee, 105 Wis. 591, 47 L.R.A. 688, 81 N. W. 864; Foens Bros. Hardware Co. v. Erb, 54 Ark. 645, 13 L.R.A. 353, 17 S. W. 7; Packard v. Hayes, 94 Md. 233, 51 Atl. 32; Sanitary Dist. v. Lee, 79 Ill. App. 169; Field v. Austin, 131 Cal. 379, 63 Pac. 692; Moran v. Thompson, 20 Wash. 536, 56 Pac. 29; Ertle v. Leary, 114 Cal. 238, 46 Pac. 1; Manly Bldg. Co. v. Newton, 114 Ga. 245, 40 S. E. 274; Andrews v. Ada County, 7 Idaho, 453, 63 Pac. 592; Piedmont Paving Co. v. Allman, 136 Cal. 88, 68 Pac. 493; Fay v. Reed, 128 Cal. 357, 60 Pac. 927; McBrian v. Grand Rapids, 56 Mich. 95, 22 N. W. 206.

Any taxpayer or officer of the city had a right to question the validity of the bonds. See Brady v. New York, 20 N. Y. 312; McBrian v. Grand Rapids, 56 Mich. 95, 22 N. W. 206; Wells v. Burnham, 20 Wis. 112; Kneeland v. Milwaukee, 18 Wis. 411; Saunders v. Iowa City, 134 Iowa, 132, 9 L.R.A.(N.S.) 392, 111 N. W. 529; State v. Shawnee County, 57 Kan. 267, 45 Pac. 616; Barber Asphalt Paving Co. v. Hunt, 100 Mo. 22, 8 L.R.A. 110, 18 Am. St. Rep. 530, 13 S. W. 98; Warren v. Barber Asphalt Paving Co. 115 Mo. 572, 22 S. W. 490; Verdin v. St. Louis, 131 Mo. 26, 33 S. W. 480, 36 S. W.

52; Kilvington v. Superior, 83 Wis. 222, 18 L.R.A. 45, 53 N. W. 487; Ricketson v. Milwaukee, 105 Wis. 591, 47 L.R.A. 685, 81 N. W. 864.

*Emerson H. Smith, W. H. Shure,* and *Ball, Watson, Young & Lawrence,* for respondent.

The action in which leave to intervene was sought was purely a mandamus proceeding to require the city treasurer to perform a municipal duty, and such action was proper. People v. Hastings, 5 Ill. App. 436; State ex rel. Fullheart v. Buckles, 39 Ind. 272; Henderson v. State, 53 Ind. 60; Rice v. State, 95 Ind. 33; State ex rel. Minneapolis Tribune Co. v. Ames, 31 Minn. 440, 18 N. W. 277; State ex rel. Ahrens v. Fiedler, 43 N. J. L. 400; People ex rel. New York & H. R. Co. v. Havemeyer, 16 Abb. Pr. N. S. 219, 3 Hun, 97; Re Freel, 148 N. Y. 165, 42 N. E. 586, affirming 89 Hun, 79, 35 N. Y. Supp. 59; State ex rel. Treat v. Richter, 37 Wis. 275; People ex rel. Taylor v. Brennan, 39 Barb. 522; People ex rel. Hathorn v. White, 54 Barb. 622; Pearsons v. Ranlett, 110 Mass. 118; Smalley v. Yates, 36 Kan. 519, 13 Pac. 848; Angle v. Runyon, 38 N. J. L. 403; State ex rel. Compton v. Anderson, 52 N. J. L. 150, 18 Atl. 586; Com. ex rel. Century Co. v. Philadelphia, 176 Pa. 588, 35 Atl. 195.

Petitioners can intervene only for the protection of their own individual interests, and for that purpose only in the event that they can obtain adequate protection in no other way. United States v. Northern Securities Co. 128 Fed. 812; Kelsey v. Murray, 18 Abb. Pr. 294, 28 How. Pr. 243; Bray v. Booker, 6 N. D. 526, 72 N. W. 933; Dickson v. Downs, 11 N. D. 407, 92 N. W. 798.

Intervener cannot inject new issues into a pending cause by his complaint in intervention, but must take the case as he finds it. Teachout v. Des Moines Broad-Gauge Street R. Co. 75 Iowa, 722, 38 N. W. 147; Powell v. Leicester Mills, 92 Fed. 115; Charleston & W. C. R. Co. v. Pope & Fleming, 122 Ga. 577, 50 S. E. 374.

It was purely a matter in the discretion of the court as to whether the application should be allowed, and there was no abuse of such discretion. Hocker v. Kelley, 14 Cal. 165; Gale v. Frazier, 4 Dak. 196, 30 N. W. 141; Teachout v. Des Moines Broad-Gauge Street R. Co. 75 Iowa, 722, 38 N. W. 147; Rockwell v. Coffey, 20 Colo. 397, 38 Pac. 377; London, P. & A. Bank v. Abrams, 6 Ariz. 87, 53 Pac. 589;

Jacobs v. Hershey Lumber Co. 124 Wis. 54, 102 N. W. 319; Scheidt v. Sturgis, 10 Bosw. 606; Hart v. Kohn, 12 Misc. 648, 33 N. Y. Supp. 272; Gale v. Frazier, 4 Dak. 196, 30 N. W. 138, (affirmed in 144 U. S. 509, 36 L. ed. 521, 12 Sup. Ct. Rep. 674); Koehler v. Brady, 82 App. Div. 279, 81 N. Y. Supp. 695; MacArdell v. Olcott, 62 App. Div. 127, 70 N. Y. Supp. 930; Wall v. Beach, 20 App. Div. 480, 47 N. Y. Supp. 33; Earle v. Hart, 20 Hun, 75; Callanan v. Keeseville, A. C. L. C. R. Co. 48 Misc. 476, 95 N. Y. Supp. 513; Draper v. Pratt, 43 Misc. 406, 89 N. Y. Supp. 356; Allen v. Coe, 109 Wis. 635, 85 N. W. 492.

BRUCE, J.   The intervener and appellant has entirely mistaken his remedy, in so far as the alleged illegality of the contract for the construction of the filtration plant is concerned.   Even if it be true (and on this matter we express no opinion) that the contract for the construction of the filtration plant was illegally let, this fact in no manner justifies an intervention in the case at bar.   The mandamus proceedings were brought, not to enforce any right or compel any action under the contract for the erection of the filtration plant, nor to obtain any money on such contract from the proceeds of said bonds, but merely to compel the city treasurer to sign bonds for the purpose of negotiation, which had been sold by the city of Fargo to the Minnesota Loan & Trust Company.   There is a clear distinction, indeed, between a proceeding which seeks to invalidate an election to determine whether an issue of bonds shall be made, or to invalidate the bonds themselves, and a proceeding which seeks to prevent the payment of the proceeds of such bonds upon an illegal contract.   Such being the case, the trial court did not abuse its discretion in refusing to permit appellant and intervener to intervene in the case and to allege and urge the invalidity of such contract.   There were, however, other matters in dispute in the original action, for, although the answer of the principal defendant and respondent, Chas. H. Mitchell, did not raise the question in so many words, the original complaint in the mandamus proceedings alleged "that at and during all the times herein mentioned, said city of Fargo has not become indebted, and is not now, and by the sale of such bonds would not become, indebted in an amount exceeding 4 per cent of the taxable property of the said city

of Fargo as determined by the city assessment last preceding the 6th day of July, 1910, and as determined by the city assessment for the year 1911." This was a complete allegation that the city was not indebted beyond its constitutional limit. See § 183, art. 12, Constitution of North Dakota. The answer of Chas. H. Mitchell expressly stated that "his refusal to sign such bonds in his official capacity or otherwise is based upon facts heretofore set forth upon the pendency of such action, testing the validity of said contract, the proceedings leading up to it, and the issue of said bonds as aforesaid; that said action has never been determined, and, as respondent is informed and verily believes, upon consultation with counsel in reference thereto, and advised by said counsel after a full and complete investigation of the facts relating to the letting of said contract and the issue of said bonds for the construction of said filtration plant as aforesaid, such proceedings are, and all of them, absolutely void and of no effect, *and that the pretended issue of said bonds in the sum of $65,000 is illegal and void and of no effect,* and would create an obligation beyond the powers of the officers of said city to enter into, and of such character as would impose a personal liability upon the respondent and his bondsmen to the amount of said bond given as said city treasurer of the city of Fargo as aforesaid for the faithful performance of his duties." It cannot therefore be said that on these pleadings the issue of the indebtedness of the city of Fargo was not submitted to the trial court, or was not raised by the pleadings themselves. Nor can it be said that the issue of the pending action by W. J. Price against the city of Fargo et al. was not involved or considered, as the same was specially pleaded in the answer. Nor, on the other hand, can it be said that the whole question of the validity of the election was not involved, as all of the facts relating thereto were specially pleaded in the complaint of the principal relator. The intervening petition, therefor, and proposed answer, really raised no new questions. The question, therefore, before this court, is whether, *after a demurrer to the sufficiency of the answer has been argued to the court,* the attorney for the defendant may be allowed to intervene on his own behalf and set up in his answer the same defenses which, if not especially pleaded by the defendant in chief and in the original proceeding, were necessarily involved in the issues which were presented to the court; for the rule of pleading

must be borne in mind that a material allegation in a complaint which is not denied or otherwise met is deemed admitted; or whether, fearing that the principal defendant will not appeal, such attorney, on his own behalf, may intervene in order that he may himself appeal and have the questions determined by the supreme court. We believe that he certainly could not do so as a matter of right, and that it was no abuse of discretion on the part of the trial court to refuse him permission so to do. This is the well-established rule, indeed even in cases where the issues sought to be presented by the intervener were not directly raised by the pleadings in the original case. Section 6825 of the North Dakota Code provides that any person may, *before the trial,* intervene in an action or proceeding, who has an interest in the matter in litigation, in the success of either party, or an interest against both. "An intervention . . . is made by complaint setting forth the ground upon which the intervention rests, *filed by leave of the court,"* etc. This statutory provision is the only one that we have been able to find which permits the proceeding. It is identical in its wording, if not an exact copy of § 387 of the Code of Civil Procedure of California, and is a re-enactment of § 90 of the Code of Civil Procedure of 1877 of the territory of Dakota. It is also, to all intents and purposes, a codification of the general rules of procedure upon the subject which have generally prevailed throughout the United States. See 123 Am. St. Rep. 280, note, et seq. In California, in the territory of Dakota, and everywhere, as far as we are able to ascertain, it has been held that the right, to be exercised as a matter of right, must be claimed *before the trial,* and that, even if the trial court has the right to permit its exercise after the beginning of the trial, it is not an abuse of discretion for him to refuse his permission. Especially should this be the rule where, as in the case at bar, the petitioner knows that the issues he seeks to raise will not be urged, and we should remember that in this case the intervener expressly states that prior to the trial his client (the principal defendant) refused to himself question the validity of the election or of the bond issue. "The said Mitchell," he said, ". . . instructed your petitioner as his counsel . . . to draw an answer setting up, and only setting up, the pendency of an action by W. J. Price against the city of Fargo et al.; that your petitioner repeatedly called Mr. Mitchell's attention to the fact that the validity

of the said bonds was not attacked in said answer, and said Mitchell has refused to attack the validity of the said bonds." It is perfectly clear, indeed, that before the trial he was fully cognizant that the validity of the election and of the bond issue would not be urged with the consent of his client. The language of the supreme court of the territory of Dakota in the case of Gale v. Frasier, 4 Dak. 196, 30 N. W. 138, 141, is applicable here. "The next step in the proceeding," the court said, "was a motion and petition of Margaret Frazier in intervention [and], asking to be made a party defendant, and seeking by her complaint to be adjudged a trustee of said lands for the use and benefit of the said defendant, Byron M. Smith. This application was presented by her attorneys, Boyce & Boyce, some of whom had been from the commencement of the proceedings attorneys for the defendant, Smith. . . . Was Margaret Frazier's application made in time? 'An intervention takes place when a third person is permitted to become a party to an action or proceeding between other persons,' and is made by complaint setting forth the ground upon which the intervention [rests], *'filed by leave of the court,'* etc. Code of Civil Procedure, § 90. The corresponding provision in the California Code is identical with our own. Iowa is similar, except no leave of court is first to be obtained. In that state the complaint in intervention may be filed as a matter of right before trial by any person claiming to have an interest in the matter in litigation; the complaint, of course, subject to all legal objections the same as any other pleading in the case. We must therefore conclude that this power of permission or refusal was vested in the court by the statute makers for some purpose. None is apparent, unless it be for one of the three reasons presented by the above proposition, *viz.,* that the complaint does not state a proper case for intervention; or, second, that the facts are so imperfectly set forth in the complaint that a cause of action is not presented thereby; or, third, that the application to the court for leave to intervene was not seasonably made. As the first two of these propositions could be taken advantage of after the application had been permitted by the court, either by demurrer or a motion to strike from the files, we are led irresistibly to the conclusion that the sound discretion of the court was to be exercised when required by the last. It is unfortunate, to say the least, but the evidence is abundant in all courts

that litigants with great interests involved are often, by one pretext or another, compelled to submit to vexatious delays in the judicial determination of their rights. To remedy this evil, stringent legislation is sometimes enacted; exhaustive and rigorous rules of court are often adopted. Notwithstanding these, the exercise of the sound discretion which is always vested in the court is very often invoked and exercised by that tribunal in the proper administration of the law. No doubt can be entertained but that a correct interpretation of the statute under consideration is that, if the court was satisfied that any object was sought to be attained other than the proper and speedy adjustment of the matter in controversy, the application for intervention might safely be denied, and the applicant refused [permission] to become a party in the determination of issues which other parties were submitting for judicial adjustment. It may, however, be safely admitted that an abuse of discretion by the trial court would be error; and, while we are not disposed to seriously question the proposition of the learned counsel for the appellant that 'intervention under the Dakota Code is not the mere discretionary privilege grudgingly bestowed, . . . but is a right to be freely exercised,' yet we are of the opinion that it is a right which must be exercised with reasonable diligence, rather than a right which may be toyed with at pleasure, and exercised [as a] *dernier resort*, for the purpose either of gaining additional time or forcing an opponent to meet issues which are suddenly thrust upon him by an entire stranger to the case. . . . If it was so essential to the interest of defendant, Smith, that Margaret Frazier be allowed to come to his assistance, it is somewhat remarkable that it should not be discovered before the cause was called in court for trial. If Smith elected not to adopt the course heretofore suggested, and failed to cite or notify Margaret Frazier to appear and protect him and defend her covenants, we think she was bound to act promptly in the other course. This she did not do. The application under the circumstances came too late, and the court, in the exercise of the discretionary power conferred by the statute, committed no error in denying the motion." See also Pinkard v. Willis, 24 Tex. Civ. App. 69, 57 S. W. 892; Hibernia Sav. & L. Soc. v. Churchill, 128 Cal. 633, 79 Am. St. Rep. 73, 61 Pac. 279, 280; Gale v. Frazier, 4 Dak. 196, 30 N. W. 141, affirmed in 144 U. S. 509, 36 L. ed. 521, 12 Sup. Ct.

Rep. 674; Alley v. Nott, 111 U. S. 472, 28 L. ed. 491, 4 Sup. Ct. Rep. 495; State ex rel. Montana C. R. Co. v. District Ct. 32 Mont. 37, 79 Pac. 546.

We do not wish to be understood as intimating our belief that the intervener in this case sought to intervene for the purpose of delay. We believe, indeed, that he acted in the utmost good faith, and from the highest of motives. We are nevertheless of the opinion that his request was unreasonably delayed, and that the court did not abuse its discretion in refusing its permission. The case of Gale v. Frazier, which we have just cited, offers, indeed, a much stronger pretext for intervention than does the one at bar, for in it, though the right to intervene was asked some nineteen months after the issuance of the summons and after what appeared to the court to be an unreasonable delay, it was nevertheless asserted before the trial could, in any sense of the word, have been said to have begun. Here the right was sought after a demurrer had been interposed to the answer and the argument had been had thereon. In the case of Alley v. Nott, 111 U. S. 472, 28 L. ed. 491, 4 Sup. Ct. Rep. 495, it was held that a general demurrer to a complaint raised an issue which, when tried, would finally dispose of the case as stated in the complaint, on its merits, unless leave to amend or plead over was granted, and that the argument of such a demurrer was a trial of the action within the meaning of the act of 1875 in regard to the removal of causes. In that case the state court decided the issue against the plaintiff upon the demurrer, but, before entering final judgment, granted a new trial with leave to amend the pleadings. It was held that it was too late to remove the cause. "The trial of such an issue," the court said, "is the trial of the cause as a cause, and not the settlement of a mere matter of form in proceeding." We are aware of the fact that in a number of cases, noticeably those of Lipscomb v. State, 76 Miss. 253, 25 So. 158, and State v. Kent (State v. Pancoast) 5 N. D. 516, 25 L.R.A. 518, 67 N. W. 1052, it has been held that the trial of an action does not begin until the impaneling of the jury. Practically all, if not all, of these cases, however, are criminal cases, where the final determination of the issues is for the jury, and not the court. In a mandamus proceeding, on the other hand, the final determination is for the court. There is no jury, and a determination of a demurrer would, unless the court granted

24 N. D.—14.

leave to amend, be conclusive of the case, and the argument on the demurrer involved the whole of the trial. We also realize that a number of authorities state that the trial begins "after all dilatory proceedings have been overcome." See Lipscomb v. State, supra. A general demurrer in a mandamus proceeding, however, which settles the whole point in controversy in the litigation, can hardly be said to be a dilatory plea. The main reason for the intervention in this case was that the interveners might be allowed to appeal from the ruling on the demurrer, and thus have the points in controversy definitely settled by the supreme court. So far this court has not conclusively passed upon the identical question before us, and as to when the trial of an action in mandamus cases may be said to have begun. It has, however, on several occasions, considered the question in other proceedings, and the inference from the cases is, we think, clear. See Gale v. Frazier, 4 Dak. 196, 30 N. W. 138; State v. Kent, supra; Second Nat. Bank v. First Nat. Bank, 8 N. D. 50, 76 N. W. 504; State v. Hazledahl, 2 N. D. 521, 16 L.R.A. 150, 52 N. W. 315; Walker v. Maronda, 15 N. D. 63, 106 N. W. 296. We are quite satisfied that in a mandamus proceeding at any rate, where the issues are tried by the court, and not by the jury, the trial has been begun when a general demurrer has been argued. In any event we are of the opinion that the court did not abuse its discretion in this case.

We have so far dealt with the question of the discretion of the trial judge. We are in serious doubt, however, whether he had any discretion in the premises at all. The statute on the subject is explicit. "Any person may *before trial* intervene," it says, and nowhere is there to be found any provision in the statute for an extension of this time. We have cited authorities which would lead us to believe that the trial has begun when a demurrer has been interposed and argued. In addition to these authorities we call attention to the provisions of our statute. Section 7008, Rev. Codes 1905, provides that "a trial is a judicial examination of the issues between the parties, whether they are issues of law or of fact," while § 7005 provides that "an issue of law arises upon a demurrer to the complaint, answer, or reply, or to some part thereof." We are seriously in doubt, indeed, whether the trial court had really any discretion, and whether his discretion did not merely extend to deciding whether the right of intervention should

be allowed *before the trial,* and that, after the trial had once begun, that discretion was not over. It seems to us, indeed, that, in order to confer upon a trial court the right to allow an intervention after the argument of a demurrer, we must ourselves judicially legislate, and say that when the legislature said "before trial," it meant "at any time before the final judgment."

The judgment of the District Court is affirmed.